**Gerald H. SCARPELLI, Petitioner,**

v.

**John R. GAGNON, Respondent.**

**No. 68-C-387.**

United States District Court,
E. D. Wisconsin.

Sept. 21, 1970.

William M. Coffey, Milwaukee, Wis., for petitioner.

William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent.

## OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS

REYNOLDS, District Judge.

Gerald H. Scarpelli has filed a petition for writ of habeas corpus pursuant to § 2241 et seq., Title 28, United States Code of Laws. The petition challenges the legality of the procedure used to revoke his probation. The petitioner's probation was revoked by the Wisconsin State Department of Public Welfare without affording the petitioner a hearing. The petitioner claims that this action taken against him is in violation of both the due process and equal protec-

tion clauses of the Fourteenth Amendment. For the reasons set forth below, I have concluded that the revocation of petitioner's probation without a hearing was impermissible and that, therefore, the petition for writ of habeas corpus must be granted subject to the special conditions set forth at the conclusion of this opinion.

## FACTS

On July 9, 1965, the petitioner, upon entering a plea of guilty, was convicted of armed robbery in violation of § 943.-32(1)(b), (2), Wisconsin Statutes, in the County Court of Racine County, Wisconsin. The petitioner was sentenced on that date to an indeterminate term of not more than fifteen years at the Wisconsin State Reformatory, Green Bay, Wisconsin. However, execution of the sentence was stayed and the petitioner was placed on probation to the State Department of Public Welfare for a period of seven years.[1] On the same date, the petitioner signed a "Parole Agreement and a Travel Permit and Agreement to Return" and was allowed to return to Illinois which was, at that time, his home. Pursuant to the Uniform Act for out-of-state parolee supervision,[2] the Adult Probation Department of the Circuit Court of Cook County, Illinois, accepted the probation supervision responsibilities over the petitioner.

On August 20, 1965, the petitioner's probation supervisor recommended to the State Department of Public Welfare in Wisconsin that the petitioner's probation be revoked due to his alleged association with known criminals and his alleged involvement in a burglary. On the same day, the district administrator in Wisconsin concurred in the recommendation of revocation. On August 27, 1965, the chief of Probation and Parole Services also concurred in the recommended revocation of the petitioner's probation. On September 1, 1965, an order revoking the petitioner's probation was signed by Wilbur Schmidt, the Director of the Wisconsin State Department of Public Welfare.

On September 3 or 4, 1965, the petitioner was picked up at his place of employment in Illinois and transported to the sheriff's office in Niles, Illinois. Later in the same day, he was transported to the Racine County jail and held overnight. On September 5, 1965, he was transported to and received at the Wisconsin State Reformatory in Green Bay, Wisconsin.

It is undisputed that the petitioner did not at any time receive notice or a hearing of any kind pursuant to the revocation of his probation.

It appears from the record in this case that the petitioner was arrested on August 5, 1965, in Deerfield, Illinois, for burglary. The record also contains in this regard an unsigned statement allegedly given by the petitioner to Robert J. Smart, Assistant State's Attorney, Cook County, Illinois, which, if true and valid, could fairly be construed as a confession to the burglary on August 5, 1965. It further appears from the record that the petitioner was referred to in newspaper articles in the Chicago Tribune concerning the alleged burglary in Deerfield on August 5, 1965.

The petitioner maintains that he is innocent of the burglary charges from Deerfield (which were apparently dropped subsequent to the revocation of his probation) and could have proven his innocence in court. He contends further that he should have been provided an opportunity to explain and answer the allegations about his involvement in the alleged burglary which he maintains were the basis of the revocation of his probation, but that he was not afforded any hearing in which he could answer the allegations made against him.

At the time of filing his petition for writ of habeas corpus, the petitioner was an inmate in a Wisconsin State correctional institution. However, on

1. See Wisconsin Statutes, § 57.01 et seq.

2. See Wisconsin Statutes, § 57.13.

June 4, 1969, subsequent to filing the instant writ, the petitioner was released from prison in Wisconsin and was paroled to a federal detainer. The petitioner had previously been sentenced to a term of eight years pursuant to a federal conviction. The petitioner is thus currently a parolee of the State of Wisconsin, incarcerated in a federal prison in Terre Haute, Indiana.

### ISSUES

■ The respondent does not contend that the present petition is moot or that this court lacks jurisdiction to consider it by virtue of the fact that petitioner was paroled from prison in Wisconsin subsequent to filing this petition for writ of habeas corpus. I have concluded that the petition is not moot and that this court has jurisdiction to consider it. The petitioner's parolee status is sufficient "custody" for the purpose of § 2241 et seq., and this court's jurisdiction. The possible adverse effects of the petitioner's probation revocation are sufficiently important "collateral consequences" to save the petition from mootness although the petitioner is no longer technically incarcerated by virtue of the probation revocation. See Sibron v. New York, 392 U.S. 40, 50–55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carafas v. LaVallee, 391 U.S. 234, 235, 237–240 (1968); Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Hahn v. Burke, 430 F.2d 100 (7th Cir. 1970); and Hewett v. North Carolina, 415 F.2d 1316, 1320–1321 (4th Cir. 1969).

The petitioner's first contention is that the due process clause of the Fourteenth Amendment and the "fundamental principles of liberty and justice" which flow from the due process clause require that a probationer be given notice and hearing prior to the revocation of his probation.

■ The issue of the necessity of a hearing prior to probation revocation has been the subject of an increasing volume of commentary.[3]

On August 19, 1970, the United States Court of Appeals for the Seventh Circuit decided the case of Hahn v. Burke, supra. The Hahn case involved an appeal from a district court denial of a petition for writ of habeas corpus. In Hahn, one of the petitioner's contentions on appeal was that the revocation of his probation[4] without a hearing violated his constitutional rights.

The Seventh Circuit found that the revocation of the petitioner's probation without affording him a hearing was violative of "the basic requirements of due process." In reaching its decision, the Hahn court considered the bases which had been utilized by other courts to

---

3. See Cohen, Sentencing, Probation and the Rehabilitative Ideal: The View from Mempa v. Rhay, 47 Tex.L.Rev. 1 (1968); Bassett, Discretionary Power and Procedural Rights in the Granting and Revoking of Probation, Journal of Crim. Law, Crim. & Pol.Sci., Vol. 80, No. 4, Pg. 479 (1969); Benjamin, Due Process and Revocation of Conditional Liberty, 12 Wayne L.Rev. 638 (1966); Comment: Right to Counsel—State Courts Split on Probationer's Right to Counsel at Revocation Hearing, 42 N.Y.U.L.Rev. 955 (1967); Sklar, Law and Practice in Probation and Parole Revocation Hearings, 55 Jour.Crim.Law, Crim. & Pol.Sci. 175 (1964); Note, Legal Aspects of Probation Revocation, 59 Colum.L.Rev. 311 (1959). See also: Federal Rules of Criminal Procedure, Rule 32(f), providing for hearing in federal probation revocation; Report of the President's Commission on Law Enforcement and the Administration of Justice—Task Force Report: Corrections, page 88, calling for hearing and the appointment of counsel for probation revocation; ALI Model Penal Code, § 301.4 (1962), calling for notice and hearing before revocation; ABA Standards for the Administration of Criminal Justice, § 5.4, 7 CrL 3079 and 7 CrL 2418; Study Draft of New Federal Criminal Code, June 8, 1970, § 3104(2) at 277–78.

4. Wisconsin Statutes, § 57.03(1), provides for the revocation of probation without a hearing in that the department is empowered, where the probationer has already been sentenced, to transport him directly to prison.

reach a contrary conclusion that a hearing before probation revocation was *not* required. Since similar arguments are urged by the respondent in this case, it is worth noting how the *Hahn* court treated these issues. Regarding the "privilege-right" distinction, the Court said:

"* * * While we are mindful that probation is a privilege and not a right and is subject to the conditions of the court, *see* Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), essential procedural due process no longer turns on the distinction between a privilege and a right. *See* Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (May 23, 1970); Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 22 L.Ed. 2d 600 (1969); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed. 2d 965 (1963); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). *See also* Von Alstyne, The Demise of the Right—Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1967–8)." Id., 430 F.2d 103.

With regard to the argument that probation is a form of contract, a condition of which is the waiver of right to a hearing, the *Hahn* Court disagreed saying:

"* * * Probation is in fact not a contract. The probationer does not enter into the agreement on an equal status with the state. * * *"

The Court then quotes from Judge Celebrezze's dissenting opinion in Rose v. Haskins, 388 F.2d 91, 100 (6th Cir. 1968), wherein Judge Celebrezze stated:

"* * * if the negative pregnant that is implicit in the contract theory is true (that if the parolee had not agreed to summary revocation he would have had the right to a hearing), then that theory has recognized that a right to a hearing is inherent in the revocation situation. Waiver of such a valuable right is not to be lightly determined, and when the 'choice' of the parolee is to remain in prison or accept such a burdensome provision, the 'choice' to accept parole can hardly be termed a voluntary waiver of the right to a hearing. * * * *"

The Court in *Hahn*, in finding that due process dictated a hearing prior to probation revocation, referred to the recent United States Supreme Court case of Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg*, the Supreme Court held that welfare recipients have a constitutional right to a hearing before termination of public assistance benefits. As noted in the *Hahn* opinion, the Supreme Court in *Goldberg* stated at page 262, 90 S.Ct. at page 1018:

"* * * The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168 [71 S.Ct. 624, 647, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring) and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. * * * *"

Noting the fact that what was at stake in a probation revocation was a man's liberty, the Seventh Circuit in *Hahn* stated:

"* * * Weighing the 'extent to which he [the petitioner] may be "condemned to grievous loss" ' against 'the governmental interest in summary adjudication' we find the petitioner's loss of freedom to outweigh the added state burden of providing a limited hearing to allow petitioner to be confronted with his probation violation and to be heard.

"The state need not grant probation, but if it does so, it should not be able to arbitrarily revoke such probation without giving petitioner a reasonable opportunity to explain away the accusation that he had violated the conditions upon which his probation was granted. * * * When the

state created conditions of probation it impliedly agreed to continue petitioner's probation as long as the conditions were satisfied. To allow the state to summarily revoke the petitioner's probation without a hearing to determine if the conditions upon which the probation was granted have been violated, is state action inconsistent with the due process guarantees of the fourteenth amendment."

The decision in Hahn v. Burke, supra, is directly in point and controls decision of the present petition for writ of habeas corpus. The petitioner was entitled to a hearing before the revocation of his probation.[5]

The petitioner in this case has also claimed that the revocation of his probation without a hearing deprived him of equal protection of the laws. He bases this claim on the allegation that probationers in Milwaukee County are afforded a hearing before the sentencing judge prior to revocation, whereas probationers in the rest of the state may be, and are, revoked summarily by the department with no hearing. In light of Hahn v. Burke, supra, requiring a hearing prior to revocation of probation, I need not consider the petitioner's equal protection arguments, and I express no opinion as to their merits.

The petitioner in this case further contends that if he is entitled to a hearing prior to revocation of his probation, he is also entitled to the assistance of counsel at that hearing. The court of appeals in *Hahn* did not deal with this issue in its opinion.

In Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the Supreme Court stated:

"* * * appointment of counsel for an indigent is required *at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected. * * *"* (Emphasis supplied.)

*Mempa* involved probation revocation proceedings (hearings which were provided for by statute) in the State of Washington. When a criminal defendant in Washington is placed on probation, sentence is deferred; that is, not imposed until such time, if ever, as probation is revoked. Upon revocation, the sentencing judge is required to administer the maximum sentence to the probationer. However, the judge is also free to make recommendations to the prison authorities as to the actual length of time the probationer should serve upon incarceration. The prison authorities are not required to abide by the judge's recommendations but, as indicated in *Mempa*, probably often do so. It was in this factual context that the Supreme Court in *Mempa* held that counsel was required at the revocation hearing in Washington. The decision of McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L. Ed.2d 2 (1968), gave *Mempa* retroactive application.

Many courts have held *Mempa* to be restricted to its narrow factual context only. That is, these courts have expressed the opinion that *Mempa* applies only to probation revocation proceedings where deferred sentencing is involved.[6] In my view, *Mempa* should not be read so narrowly.[7] The fundamental premise of *Mempa* is that counsel is required "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." The fact that a previously deferred sentence may be imposed is not the only aspect of probation revocation proceedings which make them a "stage * * * where substan-

5. See also Marquardt v. Gagnon, 314 F. Supp. 709 (E.D.Wis.1970).

6. U. S. ex rel. Bishop v. Brierly, 288 F. Supp. 401 (E.D.Pa.1968); Holder v. United States, 285 F.Supp. 380 (E.D. Tex.1968); Sammons v. United States, 285 F.Supp. 100 (S.D.Tex.1968); United

States v. Hartsell, 277 F.Supp. 993 (E.D. Tenn.1967); Trautsch v. Gagnon (No. 68 – C – 108, W.D.Wis.1968—unpublished opinion).

7. For other cases holding or suggesting that *Mempa* applies to probation revocation proceedings even in the absence of

tial rights * * * may be affected." Under the state procedure involved in *Mempa*, the previously deferred sentence was imposed only if the outcome of the revocation hearing was that conditions of probation had, in fact, been violated and that, consequently, probation should be revoked. In this connection, there is language in *Mempa* wherein the Supreme Court expresses concern about the nature of the proceeding leading to the decision of whether to revoke probation or not. After noting that appeal in a case involving a guilty plea followed by probation can only be taken after sentence is imposed following revocation, and noting that a plea of guilty may be withdrawn at any time prior to imposition of sentence, the Supreme Court said:

> "The two foregoing factors assume increased significance when it is considered that, as happened in these two cases, *the eventual imposition of sentence* on the prior plea of guilty *is based on the alleged commission of offenses for which the accused is never tried.*" (Emphasis supplied.) Id., 389 U.S. at 136–137, 88 S.Ct. at 258.

[In *Mempa*, as in the present case, probation was revoked on the basis of *allegations* that the petitioners had committed new offenses.] Substantial rights were potentially affected in *Mempa* not only because of the possibility that sentence would be imposed, but also because the threshold determination as to whether probation should be revoked is often based upon mere allegations of misconduct. I believe that the Supreme Court, through its broad statement about the necessity of counsel at "every stage * * * where substantial rights * * * may be affected," was expressing its concern in *Mempa* for the total nature of the proceeding, not only the sentencing dimension (admittedly

the prime emphasis) but also the fact that "the eventual imposition of sentence * * * is based on the alleged commission of offenses for which the accused is never tried."

■■ In Wisconsin, sentence is not legally deferred when a defendant is placed on probation. But in fact, the sentence only becomes effective when probation is revoked. In practice, the distinction between the Wisconsin and Washington procedures is one of form more than one of substance. It is indisputable that "substantial rights" of the probationer are involved at a probation revocation hearing. The probationer's liberty hinges on the outcome of the hearing.

In Hewett v. North Carolina, 415 F.2d 1316 (4th Cir. 1970), the Fourth Circuit Court of Appeals dealt with the issue of counsel at a probation revocation hearing. In North Carolina, a hearing upon revocation of probation was provided for by statute. As in Wisconsin, this hearing did not involve deferred sentencing. Referring to Mempa v. Rhay, supra, the *Hewett* Court stated at page 1322:

> "As we read *Mempa* we are persuaded, unlike the majority of the decisions which deny the right to counsel, that it cannot be limited to its narrow factual context. The principle which undergirds that decision is broad indeed, 'appointment of counsel for an indigent is required at *every stage* of a criminal proceeding where *substantial rights* of a criminal accused may be affected.' * * * While the right to counsel applies to 'criminal proceedings,' we have little doubt that the revocation of probation is a stage of criminal proceedings. Even if a new sentence is not imposed, it is the event which makes operative the loss of liberty. * * *"

deferred sentencing, see Hewett v. North Carolina, (415 F.2d 1316 (4th Cir. 1969) ; Ashworth v. United States, 391 F.2d 245 (6th Cir. 1968) ; Peinado v. Adult Authority of Department of Corrections, 405 F.2d 1185 (9th Cir. 1969) ; Shone v. State of Maine, 406 F.2d 844, at n. 13 (1st Cir. 1969) ; State v. Seymour, 98 N.J.Super. 526, 237 A.2d 900 (1968) ; Commonwealth v. Tinson, 433 Pa. 328, 249 A.2d 549 (1969).

The *Hewett* Court concluded that counsel was required at probation revocation hearings in North Carolina even though deferred sentencing was not involved.

The respondent in this case maintains that there is no right to the assistance of counsel and relies for that contention on Brown v. Warden, U. S. Penitentiary, 351 F.2d 564 (7th Cir. 1965). In *Brown*, the Seventh Circuit dealt with the issue of counsel at a federal probation revocation hearing and found that in that case counsel was not required. The *Brown* case dealt with federal probation and involved a situation wherein the probationer had been *convicted* of a new offense before the revocation hearing. The court stressed the fact that the petitioner in *Brown* had not requested the assistance of counsel and did not deny the violation of his probation conditions. More importantly, however, since *Brown* was decided, the decisions in *Mempa* and *Hahn* have intervened. The *Brown* court relied heavily on the privilege-right distinction and referred in that regard to Escoe v. Zerbst, supra. In *Hahn*, the Seventh Circuit stated that the privilege-right dicta from *Escoe* had "all but been obliterated" by recent United States Supreme Court opinions. In my view, the Supreme Court holding in *Mempa* with regard to the necessity of counsel at "every stage" of a criminal proceeding where "substantial rights" may be affected, and the *Hahn* decision taken as a whole, undercut the basis of the holding in *Brown* sufficiently so that it need not be viewed as controlling the decision of the present issue.[8]

I find the probation revocation hearings in Wisconsin, provided for in Hahn v. Burke, supra, to be proceedings where "substantial rights" are unquestionably affected. Therefore, I find that the assistance of counsel is required at these hearings.

Finally, there is the question of what *type* of hearing is required. The court in *Hahn* held that "fundamental constitutional requirements of due process necessitate a *limited* hearing prior to a probation revocation." (Emphasis supplied.) The court then stated in a footnote:

" 6. This is not to deny that probationers could not be detained where circumstances required and a hearing was not immediately possible. We need not now explore the specific procedural characteristics which revocation must have."

The court then concluded its opinion by stating:

"For the foregoing reasons, we hold petitioner's probation revocation to be a nullity and therefore reverse and remand to the district court with directions to expunge the revocation from petitioner's record. The Wisconsin court may, however, hold a probation revocation hearing at this time if it has jurisdiction over probationer."

The quotation above, referring to "The Wisconsin court," is an indication that the *Hahn* court was requiring judicial hearings prior to revocation. However, this reference is the only mention made in the opinion in this regard. The issue of whether hearings prior to probation revocation in Wisconsin should be administrative or judicial has not been an issue in this case. I do not now attempt to decide the issue of the precise character and form of the hearings now required in Wisconsin beyond what is indicated by the opinion in Hahn v. Burke.

The foregoing opinion constitutes this court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

For the purpose of the present petition for writ of habeas corpus,

It is ordered:

1. That petitioner's probation revocation be and it hereby is adjudged to be a nullity, and the respondent is directed to expunge it from the petitioner's records.

2. That the application for writ of habeas corpus be granted, and that the

---

8. See also Ashworth v. United States, 391 F.2d 245 (6th Cir. 1968).

issuance of the writ be stayed for a period of thirty days from the date of this order to enable the Wisconsin court to hold a hearing on petitioner's probation revocation, if it so desires. If a hearing is held, the petitioner is entitled to the assistance of counsel. If such a hearing is not held within the designated time, the writ will be issued.