**John GOOLSBY, 27379–A, Petitioner,**

**v.**

**John R. GAGNON, Warden, Wisconsin Correctional Institution, Respondent.**

**Jeffery PATTERSON, Petitioner,**

**v.**

**Elmer O. CADY, Warden, Wisconsin State Prison, Respondent.**

**Civ. A. Nos. 70–C–330, 70–C–498.**

United States District Court,
E. D. Wisconsin.

Feb. 10, 1971.

Robert J. Lerner, Milwaukee, Wis., for petitioners.

William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondents.

OPINION AND ORDER

REYNOLDS, District Judge.

John Goolsby and Jeffery Patterson, both inmates in Wisconsin correctional institutions, have applied for writs of habeas corpus pursuant to Title 28, United States Code, § 2241 et seq. Both

petitioners were parolees from Wisconsin correctional institutions and had their paroles revoked pursuant to § 57.-06, Wisconsin Statutes, without a hearing. The central issue raised in both petitions is whether or not the due process clause of the Fourteenth Amendment to the Constitution requires that a parolee be given a hearing prior to the revocation of his parole.

## I. FACTS

A. *Civil Action No. 70–C–330, Goolsby v. Gagnon*

The petitioner filed for writ of habeas corpus in another branch of this court in May of 1970. On June 17, 1970, petitioner was granted leave to proceed in forma pauperis and a response was ordered from the respondent. On July 29, 1970, an opinion and order denying petitioner the relief requested was entered. Thereafter on September 3, 1970, the order of July 29, 1970, was vacated, the Court stating that he was of the opinion that the previous opinion and order should be set aside in light of the decision by the Court of Appeals for the Seventh Circuit in the case of Hahn v. Burke, 430 F.2d 100 (decided August 19, 1970), rehearing denied September 29, 1970. On September 14, 1970, counsel was appointed by the court to represent the petitioner, and briefs were requested from both sides regarding the impact of Hahn v. Burke, supra, upon the issues raised in petitioner's application for writ of habeas corpus. The case was transferred to this branch on November 2, 1970.

On July 6, 1967, petitioner was convicted of robbery in the Circuit Court of Milwaukee County. For this offense the petitioner received an indeterminate sentence of not more than four years. On January 7, 1969, petitioner was released on parole. On October 20, 1969, his parole was revoked. It is stated on the parole revocation order and warrant, dated October 10, 1969, that the petitioner absconded from supervision. The date of this violation is given as June 4, 1969.

It also stated on the order and warrant that the petitioner's whereabouts was discovered when he was convicted of disorderly conduct and fined $25 in the Milwaukee County Court.

Petitioner maintains in his traverse to the response filed by respondents that he did *not* abscond from supervision but, rather, was "acting on [his] parole officer's word." Petitioner contends that he is entitled to a hearing prior to the revocation of his parole and that he is entitled to the assistance of counsel at that hearing.

B. *Civil Action No. 70–C–498, Patterson v. Cady*

On September 1, 1970, petitioner filed an application for writ of habeas corpus in another branch of this court. On that same date, petitioner was granted leave to proceed in forma pauperis and a response was ordered from the respondent. On September 29, 1970, counsel was appointed by the court to represent the petitioner. The case was transferred to this branch on November 2, 1970.

It appears from the state department's violation reports, which are attached to respondent's response as appendices, that petitioner was convicted on June 28, 1968, while on parole, of operating an automobile without an operator's license. Petitioner's parole was continued in spite of this conviction. It then appears from another violation report dated July 16, 1969, that petitioner was charged with battery and that he left his parole officer's office without permission, thereby absconding from supervision. On July 21, 1969, petitioner's parole was revoked for absconding from supervision. There is, in addition, a further violation report indicating that petitioner was arrested on July 22, 1969, and charged with operating an automobile without the owner's consent, obstructing an officer, and driving without a driver's license. It is further stated in this violation report that the petitioner took certain steps against his parole officer when interviewed in jail, such as

using abusive language and spitting in the officer's face. Petitioner was received at the Wisconsin State Reformatory on October 15, 1969, pursuant to his revocation. The state maintains that there was ample reason for the revocation of petitioner's parole, which may well be true. However, in petitioner's pro se traverse to the response filed by the state, the petitioner maintains that he never had an opportunity to contest any of the charges made against him, and he denies that the department had "ample reason" to revoke his parole. He claims the right to a hearing and to be represented at the hearing by counsel.

Both of the petitioners have been denied relief on state habeas corpus petitions filed with the Wisconsin Supreme Court.

## II. ISSUES

In August of 1970, the Court of Appeals for the Seventh Circuit decided the case of Hahn v. Burke, supra. In *Hahn*, the Seventh Circuit found that there was a constitutional right to a hearing prior to the revocation of probation in Wisconsin. Petitioners herein contend that the rationale of *Hahn* applies with equal force to the revocation of parole. Thus, the issue presented is, given the principles enunciated in Hahn v. Burke, whether or not parolees as well as probationers are entitled to a hearing prior to the termination of their status as conditionally free men.

In *Hahn*, the Seventh Circuit stated:

"The state need not grant probation, but if it does so, it should not be able to arbitrarily revoke such probation without giving petitioner a reasonable opportunity to explain away the accusation that he had violated the conditions upon which his probation was granted. [Citations omitted.] When the state created conditions of probation it impliedly agreed to continue petitioner's probation as long as the conditions were satisfied. To allow the state to summarily revoke the petitioner's probation without a hear-

ing to determine if the conditions upon which the probation was granted have been violated, is state action inconsistent with the due process guarantees of the fourteenth amendment." *Id.* at 104.

The *Hahn* court recognized that probation (like parole) is a privilege and not a "right." However, the court stressed that "essential procedural due process no longer turns on the distinction between a privilege and a right." The court then quoted from the recent United States Supreme Court case of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970):

"The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Goldberg v. Kelly, *supra*, 90 S.Ct. at 1017–1018." *Hahn*, supra, at 103.

In *Goldberg*, the Supreme Court found that public assistance recipients were entitled to a hearing prior to the termination of their assistance. The *Hahn* court found the situation of a probationer facing revocation of probation to be at least as strong as that of the public assistance recipient.

" * * * Weighing the 'extent to which he [the petitioner] may be condemned to grievous loss' against 'the governmental interest in the summary adjudication' we find the petitioner's loss of freedom to outweigh the added state burden of providing a limited hearing to allow petitioner to be confronted with his probation violation and to be heard." *Hahn*, supra, at 104.

The issue raised by the present petitioners is whether probation should be treated differently than parole in Wis-

consin. Resolution of the issue requires applying the test from *Hahn* to parole revocations. It is important to note that this issue was *not* decided in Hahn v. Burke. At footnote 5 of that opinion, the Seventh Circuit stated: "Since we are not faced with the question of the constitutional right to a hearing pursuant to a parole revocation, we need not decide this issue." However, it is equally important to note that the *Hahn* court, after making clear that they were then only deciding the issue of probation revocation hearings, did go on to add: "(but see Celebrezze, J., dissenting in Rose v. Haskins, 388 F.2d at 97)." In Rose v. Haskins, the Court of Appeals for the Sixth Circuit held that there was no constitutional right to a hearing prior to the revocation of parole. The majority opinion relied heavily upon the "privilege-right distinction." Judge Celebrezze's dissent (which is quoted elsewhere in the *Hahn* opinion and typified as being "excellent") argued for the existence of a constitutional right to a hearing prior to the revocation of parole. Hence, while not expressly deciding the parole hearing question in *Hahn*, the court did clearly refer the reader to a dissenting opinion from another circuit where the result reached in *Hahn* was urged as proper in the case of parole revocations.

I turn now to application of the *Hahn* test to the context of parole revocations. What salient differences are there between probation and parole that could have an impact upon petitioner's potential "loss" and the governmental "interest in summary adjudication"?

With regard to petitioners' potential loss, the state argues that the loss in the case of revocation of parole is less than that suffered by a revoked probationer. I am totally unimpressed with such an argument. The state points to the fact that time spent on probation prior to revocation does not count toward tolling the time of the sentence originally imposed upon a probationer. Whereas, the state argues that time spent on parole prior to revocation *does* count toward

the time to be served. However, the state admits that the time between mandatory release date and final discharge —which is viewed as good time—*is* forfeited upon revocation of parole. Wisconsin Statutes, § 53.11. I find the state's attempt to distinguish between the degree of "grievous loss" suffered by a probationer, as opposed to a parolee, to be unpersuasive. The central fact, which applies to both probation and parole revocations, is that revocation is the event which operates to deprive a man of his liberty. In this crucial respect I find the "grievous loss" suffered by a parolee to be identical to that suffered by a probationer. When this central similarity between the position of the probationer and the parolee is considered, I believe that the dissimilarities, such as possible difference in time to be served upon reimprisonment, can properly be viewed for the present purposes as being insubstantial. Hence, I find no substantial degree of difference between the "grievous loss" to be suffered by a probationer facing revocation and a parolee facing revocation which would dictate reaching a different result with regard to the requirement of a hearing.

Does the state have a more compelling interest in summary revocation in the case of parole than in the case of probation? The state argues that it does. The state's central argument in this regard appears to be that if a hearing is required prior to revocation of parole, fewer persons will be paroled. They argue that "society's best interests would not be served since parole boards would become far more cautious in granting paroles" and that potential parolees can be "given the benefit of the doubt" when the decision as to whether or not to grant parole is made because if a mistake is made, the parolee can be speedily returned to prison.

I do not believe that more caution in the granting of parole need axiomatically follow from the provision for a limited hearing prior to revocation of parole. The parolee facing revocation would not receive a full-blown trial but, rather, a

hearing aimed at determining whether or not he violated the conditions of his parole. The state has not shown in precisely what manner the burden of a hearing prior to revocation would lead to fewer paroles. They have not argued that the burden is unbearable but only that if parolees cannot be immediately and summarily returned to prison without a hearing, then fewer persons will be paroled. Judge Celebrezze, in his dissent to Rose v. Haskins, points out that twenty-five states, the District of Columbia, and the federal system all provide for some type of hearing prior to revocation of parole.[1] Hence, Wisconsin would not be the first state operating under this requirement. In answering the argument that fewer paroles will be granted if there are procedures other than summary ones for returning parolees to prison, Judge Celebrezze points to another midwestern state which provides for a full panoply of procedural rights prior to termination of parole and notes that they have one of the highest rates of parole in the country.[2]

The state has failed to demonstrate why it necessarily follows from the fact that a parolee is to receive a limited hearing prior to his revocation that parole boards will be much more reticent to grant paroles. If we assume, as is stated by the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections (1967), at 87, that "[t]he offender * * * who is placed on parole * * * is given a guarantee by law that unless he violates certain defined conditions he will not be placed under more severe restriction," and if we assume that under the present operation of the revocation system a parolee is revoked *only* when he does, in fact, violate one of the terms of his parole, then it becomes difficult to see why requiring a hearing necessarily disrupts and distorts the system. The purpose of the hearing is only to determine if the parolee has, in fact, violated the terms of his parole. The hearing merely allows the parolee to know the allegations that he has violated the terms of his parole and to attempt to answer and explain these allegations.

The only other argument that the state appears to make with regard to its increased interest in summary revocation in the case of parole is a general one. The state argues that the administration of parole is a solely administrative function, whereas probation involves, by necessity, the judiciary. I find that this is also an unpersuasive argument. The *granting* of probation is different than the granting of parole with regard to judicial versus administrative functions. However, the *revocation* procedures for both are virtually identical.[3] The fact that a court grants probation whereas an administrative body grants parole does not mean that procedural safeguards against arbitrary action in the revocation process should attach in one instance and not in the other. No man should be subjected to the arbitrary acts, or the possibility of arbitrary acts, of another man even though the other man be a good man.

■ Applying the test enunciated in Hahn v. Burke, I find that while there are differences between probation and parole in Wisconsin, these differences are not of such a character with regard to the loss suffered by petitioners and the state's interest in summary revocation that procedural due process rights should attach in one case and not in the other. If there are sound reasons for not applying the principles of Hahn v. Burke to parole revocations, they must be found elsewhere than in the test enunciated in *Hahn*.

When the Seventh Circuit decided Hahn v. Burke, it appears that there was no direct Seventh Circuit precedent to the contrary. The *Hahn* court cited

---

1. See footnote 4, Rose v. Haskins, 388 F. 2d 91 (1968), dissenting opinion of Judge Celebrezze.

2. See footnote 14, *Id.*

3. Compare Wisconsin Statutes, § 57.03 with § 57.06.

three cases which held by way of *dicta* that there was no constitutional right to a hearing prior to probation revocation. These three cases dealt on the merits with parole. One of them was a Seventh Circuit case, Richardson v. Markley, 339 F.2d 967 (7th Cir. 1965). In addition, the state calls this court's attention to the case of Hughes v. Burke, 334 F.2d 795 (7th Cir. 1964), which also dealt with the right to a hearing in the case of parole revocations.

█ It appears that there is precedent in this circuit to the effect that there is no right to a hearing prior to parole revocation. This court is bound by decisions of the Seventh Circuit. However, as the substantive law changes, I believe the interests of justice are not served by rigid adherence to prior decisions which have been clearly and substantially undercut by *later* decisions of the circuit. If the central *rationale* of a previous case no longer exists, and that fact is evident from subsequent cases, this court does not properly discharge its duty by blindly following the *rule* of the case. Hence, in the context of the present case, I believe that the previous decisions in *Hughes* and *Richardson,* if they bear on the issue of the right to a parole revocation hearing, must be analyzed in light of the subsequent opinion in this circuit in Hahn v. Burke.[4]

Hughes v. Burke, supra, also originated in this district. Among other contentions, the petitioner in *Hughes* appears to have claimed the right to a hearing prior to revocation of his parole and the right to the assistance of counsel at that hearing. The court dealt with petitioner's contentions regarding the revocation hearing in one paragraph. The court quoted from the case of Fleming v. Tate, 81 U.S.App.D.C. 205, 156 F. 2d 848 (1946), which was apparently relied upon by the petitioner in *Hughes.* The *Hughes* court noted that the *Flem-*

*ing* court, in granting a hearing, had stressed: "The question is one of statutory construction. No constitutional right is involved, *as parole is a matter of grace."* (Emphasis supplied.) The *Hughes* court then noted that unlike the District of Columbia, where *Fleming* arose, the State of Wisconsin had not seen fit to provide for a hearing prior to the revocation of parole. The *Hughes* court denied petitioner relief.

The opinion in *Hughes* is clearly grounded in the privilege-right distinction. That is, the court appears to have concluded no constitutional issue was involved because of the fact that "parole is a matter of grace." In the subsequent opinion in *Hahn,* the court has stated unambiguously that "essential procedural due process no longer turns on the distinction between a privilege and a right." In *Hahn,* the court dealt with dicta from the Supreme Court case of Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), to the effect that there was no constitutional right to a hearing prior to the revocation of probation. This dicta from *Zerbst* was grounded in the privilege-right distinction. The *Hahn* court stated: "the basis of the dicta—the privilege-right distinction—*has all but been obliterated* by recent Supreme Court opinions * * *." (Emphasis supplied.)

I conclude that the rationale of the holding in Hughes v. Burke, supra, has been sufficiently undercut and superseded by the subsequent opinion in Hahn v. Burke that the *Hughes* decision need not be deemed as properly controlling the decision of the issues raised in this case.

I also am of the view that the case of Richardson v. Markley, supra, need not be deemed as controlling the present case. *Richardson* dealt with a narrow point related to federal parole. The petitioner in *Richardson did* have a hearing prior to the revocation of his parole as is required in the federal system.[5]

---

4. But see LeFebre v. Cady, No. 70–C–635, 322 F.Supp. 1160 (E.D.Wis., 'Nov. 13, 1970).

5. 18 U.S.C. § 4207.

What was at issue in *Richardson* was an additional preliminary hearing *before* the hearing provided for in 18 U.S.C. § 4207. Subsequent to the time of Richardson's parole revocation, the federal parole board amended its rules to provide for an initial hearing before a parolee was returned to prison where he would receive his main revocation hearing. 28 C.F.R. § 2.40. Richardson contended that his constitutional rights were violated because he did not receive this initial hearing. After noting that Richardson's parole was revoked some five months prior to the amendment of the board's rules and that Richardson had been convicted of a crime while on parole, the court found that his rights had not been violated by not receiving an initial hearing. [It is, in addition, worth noting that the *Richardson* court referred to Escoe v. Zerbst, citing the case with apparent approval with regard to probation hearings. The Seventh Circuit's present view with regard to *Escoe* is clearly set forth in *Hahn*, as previously noted.]

I believe that Richardson v. Markley is sufficiently dissimilar with regard to its facts and the scope of the issues considered to warrant the conclusion that it should not properly be deemed to control decision of the issues raised by these petitioners.

Thus, with regard to the right to basic procedural due process safeguards against arbitrary action, I find that there is no reasonable or rational ground of distinction between probation and parole revocations in Wisconsin. In both instances the procedure is summary. In both instances a man stands to forfeit his liberty and go to prison without the opportunity to know and answer the allegations made against him by the social worker charged with his supervision. When petitioners' grievous loss is weighed against the state's interest in summary revocation, I do not find the result to be meaningfully different from the conclusion reached in Hahn v. Burke. I find that just as a procedure whereby a man stands to lose his liberty without the opportunity to effectively answer the allegations against him is constitutionally impermissible in the case of probation revocations, *Hahn,* supra, it is constitutionally impermissible in the case of parole revocations. Accordingly, petitioners herein are entitled to a hearing.

Certain issues remain with regard to the content of the required hearing prior to the revocation of parole. Initially, as the *Hahn* court noted with regard to probation revocation hearings, the requirement of a hearing prior to revocation does not mean that a parolee could "not be detained where circumstances required and a hearing was not immediately possible."

Following the decision of *Hahn* in August of 1970, this branch of this court decided the case of Scarpelli v. Gagnon, 317 F.Supp. 72 (E.D. Wis.1970). In *Scarpelli,* I concluded that the right to the assistance of counsel properly applied to the hearings mandated by Hahn v. Burke. The State of Wisconsin has appealed the decision in *Scarpelli.* Petitioners herein contend that the rationale of *Scarpelli* applies with equal force to parole revocation hearings and that they are entitled to the representation of counsel.

■ In its brief (originally addressed to another branch of this court), the state argues that the *Scarpelli* decision was in error and should not be followed. The state's arguments in this regard do not raise issues or considerations which I did not consider when I decided *Scarpelli.* I am not persuaded that *Scarpelli* is in error. The state does not argue that *Scarpelli* should not apply to parole revocation hearings because of any intrinsic difference between parole and probation revocation hearings. It argues only that *Scarpelli* is in error.

Earlier in this opinion, I concluded that with respect to the necessity of basic procedural due process safeguards, probation and parole revocation proceedings were substantially indistinguishable. Accordingly, I believe the rationale of Scarpelli applies with equal force to both probation and parole revocation hearings. The inquiry at both hearings is the same. The potential loss to a parolee is the same as that of a probationer—his freedom. The value and necessity of counsel in representing the interests of the person facing revocation is the same whether he be a probationer or a parolee. I find that in the case of parole revocation hearings, as in the case of probation revocation hearings dealt with in *Scarpelli*, "substantial rights" of the person facing revocation are unquestionably involved. Therefore, here, as in *Scarpelli*, I find the assistance of counsel to be required.

Both petitioners contest the grounds of their revocation. Petitioners are entitled to a hearing on the revocation of their parole and to the assistance of counsel at that hearing. If petitioners are unable to retain counsel due to indigency, counsel should be appointed in their behalf.

The foregoing constitutes my findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

It is therefore ordered that the revocation of petitioners' paroles be and it hereby is declared a nullity.

It is further ordered that the state be given thirty days from the date of this decision in which to hold revocation hearings with regard to the revocation of petitioners' paroles.

It is further ordered that should the state decline to hold hearings on petitioners' revocations, then the petitioners herein shall both be placed back on parole.