**Frank Robert Cordee HAHN, Petitioner-Appellant,**

v.

**John C. BURKE, Warden, Wisconsin State Prison, Respondent-Appellee.**

**No. 17938.**

United States Court of Appeals, Seventh Circuit.

Aug. 19, 1970.

Rehearing Denied Sept. 29, 1970.

---

George M. St. Peter, Fond du Lac, Wis., for petitioner-appellant.

Robert W. Warren, William Platz, Madison, Wis., for respondent-appellee.

Before CLARK, Associate Justice, Retired,* and CUMMINGS and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from the district court's denial of a petition, pursuant to 28 U.S.C. § 2254 attacking petitioner's Wisconsin incarceration. Petitioner Frank Hahn pled guilty to a charge of burglary on September 12, 1964, and was sentenced to five years in the state prison for the burglary charge and an additional offense of trying to escape from the County Jail. The execution of petitioner's sentence was stayed, however, and he was placed on probation for a five-year period. Petitioner's probation was revoked without a hearing on December 4, 1964, on the basis that he had violated its terms by absconding to California, and upon his return to Wisconsin in Septem-

* The Honorable Tom C. Clark, Associate Justice, United States Supreme Court, Retired, is sitting by special designation.

ber of 1965, petitioner was confined to the Wisconsin State prison.

In January of 1968, petitioner filed a petition for a writ of error coram nobis in the Circuit Court for Clark County. An evidentiary hearing was held and the coram nobis writ was denied in February of 1968. Petitioner thereafter filed with the Wisconsin Supreme Court a petition for a writ of error to review the order of the Circuit Court denying the petition for a writ of error coram nobis. The Wisconsin Supreme Court treated the petition as one for a writ of habeas corpus and ordered a response. Upon the filing of the response, the Wisconsin Supreme Court affirmed the findings and conclusions of the Circuit Court and denied the petition for a writ of habeas corpus.

In May of 1968, pursuant to an extradition agreement between the Governors of Wisconsin and Illinois, petitioner Hahn was returned to Illinois to stand trial on several indictments for burglary. Petitioner, however, was never tried on these burglary indictments, but instead, was tried and sentenced to 5–10 years for escaping from the Champaign County Jail while awaiting trial on the burglary charges. Subsequently, Hahn was returned to Wisconsin State Prison and on December 2, 1969, received a mandatory conditional release from the Wisconsin State Prison and was placed on a one-year probation.[1]

On appeal petitioner raises the following contentions:

(1) that his sixth amendment right to representation by counsel was violated by (a) the failure of the trial court to appoint counsel to assist petitioner in his coram nobis petition, and (b) the failure of the Wisconsin Supreme Court to appoint counsel to assist petitioner in his preparation of a writ of habeas corpus to the Wisconsin Supreme Court;

(2) that the State of Wisconsin, by surrendering petitioner Hahn to the authorities of the State of Illinois while he was serving his five-year sentence in the Wisconsin State Prison, waived jurisdiction over petitioner and had no power to incarcerate petitioner upon his return from Illinois;

(3) that petitioner's constitutional rights to due process and equal protection were violated by the revocation of petitioner's probation without a hearing.

■ Before reaching the merits of petitioner's contentions, we must dispose of issues of jurisdiction and mootness. Since petitioner filed his habeas corpus petition while he was still incarcerated pursuant to his Wisconsin sentence, the "in custody" requirement of 28 U.S.C. § 2254 is satisfied. See Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed. 2d 554 (1968). Petitioner's probation status would also seem to satisfy the "in custody" requirement. Cf. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

■ As to mootness, although petitioner is not presently serving his challenged Wisconsin sentence, this appeal is not moot. The probation revocation affixes a permanent blemish to petitioner's record. If petitioner ever has future difficulties with the law in Wisconsin, the judge could take into account the fact that petitioner's probationary status was at one time revoked. Moreover, in this instance, petitioner may be entitled to his outright Wisconsin release as of September, 1969, as a result of the invalid revocation of probation and attendant lack of credit given him on his five-year sentence of September, 1964. Therefore, there are collateral consequences in allowing petitioner's Wisconsin burglary conviction and parole revocation to re-

---

1. Petitioner then returned to serve his Illinois sentence, escaped from the Illinois jail, stole a car, and was indicted, convicted and received a five-year sentence for the interstate transportation of a stolen car. 18 U.S.C. § 2312. Petitioner Hahn is presently incarcerated in the federal penitentiary at Terre Haute serving this sentence.

main on his record. *See* Sibron v. New York, 392 U.S. 40, 56, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *see also* Hewett v. State of North Carolina, 415 F.2d 1316, 1322 (4th Cir. 1969).

■ The record indicates that petitioner was represented by counsel in his coram nobis proceeding. Petitioner's counsel submitted a brief, conducted an evidentiary hearing and appeared on final argument. Consequently, we find petitioner's first contention of error to be without merit.

■ As to the allegation that the failure of the Wisconsin Supreme Court to appoint counsel on petitioner's state habeas corpus petition was error and the allegation that Wisconsin lost jurisdiction over petitioner by reason of his extradition to Illinois, we agree with the district court that both allegations should be dismissed for failure to exhaust available state remedies. 28 U.S.C. § 2254(b).

Petitioner's final contention is that the failure to provide a hearing upon revocation of his probation violated his constitutional rights.[2] The conditions of petitioner's probation were not clear. It appears that petitioner was to return to Illinois, where his mother lived, and practice his trade of barbering. Illinois, however, would not accept petitioner as a probationer, and petitioner claims that because he interpreted his probation as being contingent on staying out of Wisconsin, he believed he could not return to Wisconsin and left for California. The State Department of Public Welfare, without a hearing or without giving petitioner any opportunity to be heard, revoked his probation.

■ We hold the revocation of petitioner's probation was violative of the basic requirements of due process. While we are mindful that probation is a privilege and not a right and is subject to the conditions of the court, *see* Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L. Ed. 1566 (1935), essential procedural due process no longer turns on the distinction between a privilege and a right. *See* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (May 23, 1970); Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). *See also* Von Alstyne, The Demise of the Right—Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439 (1967–8).

The United States Supreme Court in a recent decision holding that welfare recipients were entitled to a hearing before termination of public assistance payments stated:

> The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss" Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Goldberg v. Kelly, *supra*, 90 S.Ct. at 1017–1018.

Recognizing the fact that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing, *see e.g.* Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of mislabeled vitamin product); North American Cold Storage Co. v. City of Chicago,

---

2. Petitioner's probation was revoked pursuant to Wisc.Ann.Stat. § 57.03 which provides in pertinent part:
(1) If a probationer in its charge violates the conditions of his probation, the department may order him brought before the court for sentence which shall then be imposed without further stay or if already sentenced, may order him to prison; and the term of sentence shall begin on the date he enters the prison. A copy of the order of the department shall be sufficient authority for the office executing it to take the petitioner to court or to prison.

211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure of food not fit for human use); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88. L.Ed. 834 (1944) (adoption of wartime price regulations); Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570 (1964) (disqualification of a contractor to do business with the government), the Court in *Goldberg* distinguishes these cases from the situation of a welfare recipient:

> For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care [citation and footnote omitted]. Thus the crucial factor in this context —a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else where government largess is ended—is that termination of aid pending resolution of a controversy may deprive an eligible recipient of the very means to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate.

The immediacy of desperation is at the very least equally as strong in the case of a probationer who is literally being denied his freedom. Weighing the "extent to which he [the petitioner] may be condemned to grievous loss'" against "the governmental interest in summary adjudication" we find the petitioner's loss of freedom to outweigh the added state burden of providing a limited hearing to allow petitioner to be confronted with his probation violation and to be heard.[3]

■■ The state need not grant probation, but if it does so, it should not be able to arbitrarily revoke such probation without giving petitioner a reasonable opportunity to explain away the accusation that he had violated the conditions upon which his probation was granted.[4] *See* Fleenor v. Hammond, 116 F.2d 982 (6th Cir. 1941); *see also* ALI Model Penal Code § 301.4 (1962); ABA Sentencing Alternatives and Procedures § 5.5(c); Study Draft of a New Federal Criminal Code, published June 8, 1970, by the National Commission on Reform of Federal Criminal Laws, § 3104(2) at 277–78; 1 Davis Administrative Law Treatise § 716, pp. 174–81 (1965 Supp.). When the state created conditions of probation it impliedly agreed to continue petitioner's probation as long as the conditions were satisfied. To allow the state to summarily revoke the petitioner's probation without a hearing to determine if the conditions upon which the probation was granted have been violated, is state action inconsistent with the due process guarantees of the fourteenth amendment.

■ In addition to the right—privilege dichotomy, some courts have based their denial of a hearing on the theory that probation is a form of contract. Consequently, if one condition of the probation contract is the possibility of summary revocation, the probationer or parolee cannot complain if that action is taken. We find this theory unpersuasive. Probation is in fact not a contract. The probationer does not enter into the agreement on an equal status with the state. As Judge Celebrezze stated in his excellent dissenting opinion in Rose v. Haskins, 388 F.2d at 100, finding that due process required a hearing in the case of a parole revocation:

> [I]f the negative pregnant that is implicit in the contract theory is true (that if the parolee had not agreed to

---

3. It has been argued that requiring a hearing in the case of a probation revocation would create a prohibitive cost on the system. *But see* Warren, Probation in the Federal System of Criminal Justice, 20 Fed.Prob. 3 (1955), where it is indicated that the cost of maintaining a prisoner is ten times the cost of maintaining a parolee or probationer. The small added expense of a hearing would not overtax the state probation program.

4. One may not have a constitutional right to go to Baghdad, but the government may not prohibit one from going there unless by means consonant with due process of law. Homer v. Richmond, 110 U.S.App. D.C. 226, 292 F.2d 719, 722 (1961).

summary revocation he would have had the right to hearing), then that theory has recognized that a right to a hearing is inherent in the revocation situation. Waiver of such a valuable right is not to be lightly determined, and when the "choice" of the parolee is to remain in prison or accept such a burdensome provision, the "choice" to accept parole can hardly be termed a voluntary waiver of a hearing.

We agree.

We are cognizant of the Supreme Court's opinion in Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), holding that there is no constitutional right to a hearing in the case of probation revocation.

In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. 295 U.S. at 492–493, 55 S.Ct. at 819.

*Cf.* Eason v. Dickson, 390 F.2d 585 (9th 1968), cert. denied 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968); Rose v. Haskins, 388 F.2d 91 (6th Cir. 1968); and Richardson v. Markley, 339 F.2d 967, 970 (7th Cir. 1965); (all three cases state by way of dicta that there is no constitutional right to a probation revocation hearing, and hold that there is no constitutional right to a hearing in the case of parole revocation) [5] (but see Celebrezze, J., dissenting in Rose v. Haskins, 388 F.2d at 97).[5a]

The Court in *Escoe*, however, did in fact grant petitioner a hearing pursuant to a Congressional statute. We interpret the dicta in *Escoe* to indicate only that the Court's opinion was not based on a constitutional right to a hearing and not as a binding precedented rejection of such a constitutional right. Our interpretation of the *Escoe* dicta coupled with the fact that the basis of the dicta—privilege-right distinction—has all but been obliterated by recent Supreme Court opinions, see page 103 *supra*, moves us to hold that fundamental constitutional requirements of due process necessitate a limited hearing prior to a probation revocation.[6]

No society is free when the government makes one person's liberty depend upon the arbitrary will of another. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 217, 73 S.Ct. 625, 631, 97 L.Ed. 956 (1953). Black, J., dissenting.

We wish to think Mr. George M. St. Peter for his service as court appointed counsel for the petitioner-appellant.

For the foregoing reasons, we hold petitioner's probation revocation to be a nullity and therefore reverse and remand to the district court with directions to expunge the revocation from petitioner's record. The Wisconsin court may, however, hold a probation revocation hearing at this time if it has jurisdiction over probationer.

Reversed and remanded.

---

5. Since we are not faced with the question of the constitutional right to a hearing pursuant to a parole revocation, we need not decide this issue.

5a. This opinion has been circulated to the full active court. No judge has requested a hearing *en banc*.

6. This is not to deny that probationers could not be detained where circumstances required and a hearing was not immediately possible. We need not now explore the specific procedural characteristics which revocation must have.