454 F.2d 416
 James C. GUNSOLUS, Petitioner-Appellant,
v.
John R. GAGNON, Warden, Respondent-Appellee.
Vern Levi FINK and Thomas F. Hoppe, Petitioners-Appellants,
v.
Elmer O. CADY, Warden, Respondent-Appellee.
Gerald H. SCARPELLI, Petitioner-Appellee,
v.
John R. GAGNON, Warden, Respondent-Appellant.
 Nos. 18523, 18501, 18502, 18875.
 United States Court of Appeals,
Seventh Circuit.
 Dec. 28, 1971.
 
 William M. Coffey, Milwaukee, Wis., James C. Gunsolus, Jerome H. Kringel, Milwaukee, Wis., for appellants.
 Robert W. Warren, Atty. Gen., and William A. Platz, Asst. Atty. Gen., Madison, Wis., for appellee.
 Before FAIRCHILD and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.[1]
 FAIRCHILD, Circuit Judge.
 
 
 1
 These consolidated appeals raise several questions of importance concerning the probation revocation process in Wisconsin. In Hahn v. Burke, 430 F.2d 100 (7th Cir., 1970), cert. den. 402 U.S. 933, 91 S.Ct. 1522, 28 L.Ed.2d 868, this court held that basic requirements of due process entitle a probationer to a hearing before his probation is revoked. These appeals present the related issues of (1) whether Hahn should be applied retroactively, (2) whether the probation revocation hearing must be judicial, or whether an administrative hearing will suffice, (3) whether retained counsel must be allowed to participate in the probation revocation hearing, and (4) whether indigents are entitled to the appointment of counsel to assist them at the hearing.
 
 
 2
 The basic factual pattern with respect to all four petitioners involved in the instant appeals is as follows: Petitioners were convicted of felonies in various Wisconsin courts outside of Milwaukee county and sentenced to terms of imprisonment. Execution of sentence was stayed and petitioners placed on probation in the custody of the Wisconsin Department of Health and Social Services. Each petitioner was alleged later to have committed some act or acts which violated a condition of his probation. Thereupon, the department revoked probation and petitioners were incarcerated to serve the full term of the sentence previously imposed. No hearing was conducted for any petitioner before probation was revoked. Revocation of probation with respect to all petitioners occurred prior to our ruling in Hahn. Each petitioner exhausted his state habeas corpus remedies and then sought federal habeas corpus. Each federal petition was filed prior to our ruling in Hahn. The district court denied the petitions of petitioners Fink, Hoppe, and Gunsolus in orders which pre-dated Hahn. In the case of Scarpelli, the district court ruled, after our decision in Hahn, that petitioner was entitled to a hearing prior to probation revocation and entitled to appointment of counsel for such hearing. The district court opinion is reported at 317 F.Supp. 72 (E.D.Wis., 1970).
 
 Nos. 18501 and 18502, Fink and Hoppe
 
 3
 In April, 1969 petitioners Fink and Hoppe were convicted of burglary and sentenced to indeterminate terms of not more than 4 and 3 years respectively. Execution of sentence was stayed and petitioners placed on probation to the department. As one condition of probation, each petitioner was to remain in the custody of the sheriff for one year during the time he was not employed. During this year, the department decided that each had violated this condition by absenting himself from jail "under deceptive and improper circumstances." Thereupon the department revoked probation.
 
 
 4
 No. 18523, Gunsolus.
 
 
 5
 Petitioner Gunsolus was convicted of theft and sentenced to a term of not more than 3 years imprisonment. Execution of the sentence was stayed and petitioner placed on probation for a period of 2 years, upon the condition, inter alia, that he spend his non-working hours in jail for the first six months. During this period the department decided that petitioner had absconded, and revoked probation.
 
 
 6
 No. 18875, Scarpelli.
 
 
 7
 In July, 1965 petitioner Scarpelli was convicted of armed robbery and sentenced to imprisonment for an indeterminate term not to exceed 15 years. Execution of the sentence was stayed and petitioner placed on probation for a period of 7 years. In September, 1965, the department decided that he had associated with known criminals and had been involved in a burglary. The department revoked probation. At the time of the filing of his petition for writ of habeas corpus, petitioner was incarcerated in a Wisconsin prison. On June 4, 1969 petitioner was paroled to a federal detainer. Petitioner is thus currently a parolee of the state of Wisconsin incarcerated in a federal prison. We agree with the district court that petitioner's parole does not moot this petition.
 
 
 8
 Retroactivity of Hahn v. Burke.
 
 
 9
 In Hahn v. Burke we held that constitutional dictates of due process require a state to hold a hearing before revoking probation. The state urges us to limit the effect of this holding to only those probation revocations which occur after the date of Hahn, August 19, 1970.
 
 
 10
 In Stovall v. Denno[2], the Supreme Court listed the criteria for determining the extent to which changed interpretations of the constitution with respect to criminal procedure should be applied retroactively. They are as follows: "(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of the new standards."
 
 
 11
 Although Mempa v. Rhay[3] requiring that counsel be made available at a revocation hearing which culminates in sentencing has been given full retroactive application[4] it does not necessarily follow that the Hahn requirement of a revocation hearing where revocation terminates the stay of a sentence already imposed must be retroactively applied.
 
 
 12
 On April 2, 1971, the Supreme Court of Wisconsin decided State ex rel. Johnson v. Cady[5], and held that there is a right to a hearing on revocation of probation (and of parole as well). On the question of retroactivity, the Court evaluated the situation in terms of Stovall criteria, and determined "that the hearing granted by this decision shall be prospective only except as to those petitions on file in this court or any trial court in the state as of the date of this mandate."[6] We understand "on file" to mean pending, and to exclude petitions previously filed, denied, and beyond direct review. If we misconstrue the phrase, then present petitioners, who presented petitions to state courts long ago, would only have to go back to state court to receive the benefit of Johnson.
 
 
 13
 We are not prepared to disagree with the evaluation by the Wisconsin Court of the various factors, leading to its conclusion that full retroactivity for Hahn is inappropriate. If we were so to decide similarly, the normal pattern would be to limit the Hahn decision to prospective effect except that it would be applied to Hahn himself. It is the doctrine of Stovall, p. 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199, that if full retroactivity be deemed inappropriate, the arguable inequity, to other petitioners similarly situated, of applying the new rule to the party in the case in which the new rule is announced, and the fact that he is a chance beneficiary of the new rule, are not adequate reasons for applying the new rule retroactively to all who have already brought their cases to court.
 
 
 14
 Our present situation has, however, unusual elements. The dates of the Hahn and Johnson decisions, rejecting ex parte revocations of probation, are different. Johnson is to be applied retroactively to a limited class of persons other than the Johnson petitioners in order to avoid inequity to that class. And those who properly raise the challenge in federal courts necessarily have previously pursued it in state courts.
 
 
 15
 We do not attempt to pose and analyze all the hypothetical situations in which a purely prospective Hahn, side by side with a limited retroactivity for Johnson, would cause some degree of inequity. There would exist one glaring inequity, however, among Wisconsin prisoners whose probation was revoked ex parte before the date of Hahn. Those whose state court petitions were still pending by the date of Johnson, either because filed later, perhaps relying on Hahn, or because more slowly processed, would get the benefit of the new rule by virtue of Johnson's retroactivity formula. Those who filed in state court earlier and whose petitions were denied more promptly, and who brought their claim to the federal district court before the date of Hahn, would not, except for Hahn himself, get such benefit.
 
 
 16
 We think that under the facts peculiar to this case, Stovall does not prevent our considering the inequity just referred to, and making Hahn retroactive to the limited extent necessary to avoid it. Therefore we hold that Hahn is retroactive at least so as to apply to all who, having exhausted state remedies, had filed petitions in federal district court before August 19, 1970 raising the claim here involved, which petitions had not been denied, or if denied, were still open to direct review. Hahn would thus be applied to petitioners in this case. Whether there is sound reason for according full retroactivity to Hahn would better be considered when the facts presented make it necessary squarely to face and decide the question.
 
 
 17
 Whether the revocation hearing may be administrative rather
 
 
 18
 than judicial.
 
 
 19
 As to all courts in Wisconsin except those in Milwaukee county, the statutes provide that a person placed on probation shall be in the custody of the state's department of health and social services.[7] It is the department, rather than the court, which revokes probation for violation of a condition. In cases like petitioners', where the court has already imposed sentence, the department orders the probationer to prison and his sentence begins. In cases where the court has withheld sentence, the department orders him brought before the court for sentencing.[8] In counties exceeding 500,000 population, i. e., Milwaukee, the statutes provide that the probation department of the respective court shall have custody of probationers, and "Probation violators whether sentenced or not, shall be taken before the court for a hearing."[9]
 
 
 20
 Thus the finding that a violation had occurred and the decision that probation be revoked was made by an administrative officer in petitioners' cases. Hahn has already decided that these administrative decisions were invalid because of lack of hearing. We understand that in revocations since Hahn, the department has continued to make the decisions in cases where probationers are in its custody, as the statute requires, except that a hearing is now held (though counsel is excluded). The question will now arise in the present cases whether, if the revocation proceeding is to be revived, an administrative hearing, fulfilling due process standards, will duffice. Petitioners contend that an administrative hearing and determination on the question of revocation is either inadequate, as a matter of due process, or in any event a denial of equal protection of the laws, since persons placed on probation by Milwaukee courts are given a judicial hearing.
 
 
 21
 In Hahn, the decision to revoke was also administrative, but these issues seem not to have been raised, and were not discussed in the opinion. We conclude that no answer to these questions was implied by the reference in the last sentence of the Hahn opinion to "court" rather than "department."
 
 
 22
 Assuming that the department follows a hearing procedure which otherwise fulfills due process standards (and, as will be seen, we think counsel is required), we think there is no reason to fault it because carried out by administrative personnel rather than by a judge. And we find no other constitutional provision which expressly or by implication requires that revocation of probation be accomplished within the judicial department.
 
 
 23
 Petitioners' equal protection claim rests upon the proposition that classification of probationers according to the population of the county in which the convicting court sits can not be sustained where members of one class charged with violation receive a hearing before a judge and members of the other a hearing before an administrative officer. The Supreme Court of Wisconsin has decided that territorial uniformity is not required and that this difference in procedure does not deny equal protection.[10] 0] We agree that the basis of the classification is not inherently invidious.
 
 
 24
 Moreover, considering the cases, like petitioners', where sentence has already been imposed, it does not appear that the courts in Milwaukee county have power to act in significant ways beneficial to alleged probation violators which the department lacks. The statutes do not expressly authorize the courts to reduce previously imposed sentences in connection with revocation of probation. If, indeed, the courts in Milwaukee county make a practice of doing so, no showing of that fact has been presented.
 
 
 25
 Any court which has placed a defendant on probation may at any time prior to the expiration of the probation period extend the period of the probation or modify its terms and conditions.[11] Any court which has imposed a sentence may modify it upon motion made within ninety days.[12] The fact that a court in Milwaukee county might employ either of these powers in connection with a proceeding to revoke probation, while the department could do no more than recommend such action to the court of conviction, if located elsewhere, does not, in our opinion, raise a sufficient difference so that probationers are denied equal protection.
 
 
 26
 Presence of retained counsel.
 
 
 27
 We have no difficulty in recognizing the significance of the probationer's stake in a revocation hearing, such that counsel obtained by the probationer must be admitted to the hearing and permitted to represent his client.[13]
 
 
 28
 Right to counsel, furnished if necessary.
 
 
 29
 Petitioners contend, and the district court in Scarpelli[14] held that indigent probationers are entitled to the appointment of counsel to assist them at probation revocation.
 
 
 30
 The district court relied on Mempa v. Rhay,[15] adopting the view that when sentence is imposed, as well as when imposition is stayed, and defendant is placed on probation, the criminal proceeding extends beyond sentencing into the probationary period so that a proceeding to revoke probation is still a stage of it, and a stage, of course, where substantial rights may be affected. The same interpretation of Mempa was stated in Hewett v. State of North Carolina on the ground that "[e]ven if a new sentence is not imposed, [revocation] is the event which makes operative the loss of liberty."[16] The Court of Appeals of New York has said that "[t]he principle which underlies the decision in Mempa is sufficiently broad to encompass the revocation of parole as well as of probation."[17]
 
 
 31
 With all respect[18] it seems to us that the rationale stated by the Supreme Court for its result in Mempa should be considered in deciding how far Mempa reaches. It seems to us that the Court quite carefully limited its application of a sixth amendment right to counsel at revocation of probation to a situation in which the criminal proceeding by reason of the deferment of sentencing could logically be deemed incomplete, and in which the imposition of sentence, coupled with revocation, could readily be said to be a stage of such proceeding. Almost a year after Mempa, in deciding that Mempa has full retroactive effect, the Court referred to it as deciding that sixth amendment rights had been violated at "deferred sentencing hearings", and twice characterized the right involved as "[t]he right to counsel at sentencing."[19] Surely a probation revocation proceeding affects substantial rights of a probationer even where the sentence has already been imposed, but we do not think that Mempa, with its emphasis on sentencing, held that every probation revocation is a stage of a criminal proceeding nor that, for this purpose, the entire range of the correctional process after sentencing is a part of the criminal proceeding.
 
 
 32
 In Hahn, sentence had been imposed at the time Hahn was placed on probation. This court, in deciding that Hahn's probation could not constitutionally be revoked without a hearing did not rely on Mempa nor say that the revocation was a stage of the criminal proceeding. Rather it concluded that the loss of the freedom (albeit somewhat restricted) enjoyed by a probationer was grievous, and after weighing it against the governmental interest involved, "that fundamental constitutional requirements of due process necessitate a limited hearing prior to a probation revocation."[20] We think the same due process requirements lead to the conclusion that counsel must be made available.[21]
 
 
 33
 The Supreme Court has, at least twice, decided that in proceedings where personal liberty is at stake, but which do not, or may not, constitute criminal proceedings, the due process clause of the fourteenth amendment compels the state to make counsel available. In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), a proceeding to determine delinquency of a child. Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), a proceeding under a sex offenders act "whether denominated civil or criminal."
 
 
 34
 The vast importance of revocation to the probationer is clear. It is immediately measured by the difference between confinement in an institution and freedom to live a normal life, though restricted in some degree by conditions of probation. As pointed out in Hahn, 430 F.2d p. 102, it affixes a permanent blemish to his record. Whether assistance of counsel at the revocation proceeding is essential to fundamental fairness turns on the function counsel may be expected to perform. Granting that the scope of the revocation hearing is limited and that the procedure need not be formal, the ability of counsel to direct, amplify, and promote the flow of information is nevertheless of real significance.
 
 
 35
 Violation of a condition of probation is prerequisite to revocation. Thus there is likely to be an issue of fact, in the just determination of which counsel can afford help.[22] Development of other information, bearing upon the exercise of discretion whether to revoke or merely warn for proved misconduct, would usually be an important role for counsel.
 
 
 36
 Recognizing the potential issues of fact and the scope of facts in mitigation or otherwise influential in a favorable exercise of discretion, we think that in order for the hearing, found necessary in Hahn, to be meaningful, the assistance of counsel must be available. As stated by the Supreme Court in Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."
 
 
 37
 Brown v. Warden, U. S. Penitentiary[23] is a 1965 decision of this court, holding that counsel need not be afforded at a probation revocation hearing in a federal court. Brown preceded many of the recent cases involving this subject. Since a hearing had been afforded, Brown was not concerned with the question whether a hearing was constitutionally required. The sentence had already been imposed, and we do not, under our view of Mempa, find that Brown was overruled by Mempa. Because, however, we conclude that counsel was required in order to fulfill due process, we now overrule Brown insofar as it holds the contrary.[24]
 
 
 38
 In No. 18875, Scarpelli, the judgment is affirmed. In Nos. 18501, Fink, 18502, Hoppe, and 18523, Gunsolus, the judgments are reversed and the causes remanded to the district court with directions to order release from confinement and reinstatement of probation unless, within a short but reasonable interval, to be fixed by the district court, a new revocation is ordered, after a hearing consistent with this opinion.
 
 
 
 [1]
 Honorable William J. Campbell, Senior District Judge, Northern District of Illinois, is sitting by designation
 
 
 [2]
 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967)
 
 
 [3]
 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)
 
 
 [4]
 McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968)
 
 
 [5]
 50 Wis.2d 540, 185 N.W.2d 306
 
 
 [6]
 50 Wis.2d 556, 185 N.W.2d 314
 
 
 [7]
 Sec. 973.09, Wis.Stats
 
 
 [8]
 Sec. 973.10, Wis.Stats
 
 
 [9]
 Sec. 973.11(5), Wis.Stats
 
 
 [10]
 Johnson, supra, note 5, 50 Wis.2d 553, 185 N.W.2d 306
 
 
 [11]
 Sec. 973.09(3), Wis.Stats
 
 
 [12]
 Hayes v. State, 46 Wis.2d 93, 175 N.W.2d 625 (1971)
 
 
 [13]
 Goldberg v. Kelly, 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)
 
 
 [14]
 Scarpelli v. Gagnon, 317 F.Supp. 72 (E.D.Wis., 1970)
 
 
 [15]
 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)
 
 
 [16]
 415 F.2d 1316, 1322 (4th Cir., 1969)
 
 
 [17]
 People ex rel. Menechino v. Warden, Green Haven St. Pris., 27 N.Y.2d 376, 267 N.E.2d 238, 241 (1971)
 
 
 [18]
 Opinions variously construing Mempa have been most recently collated in Dyke, "Parole Revocation Hearings in California: The Right to Counsel," 59 Cal.L.Rev. 1215 (1971)
 
 
 [19]
 McConnell, supra, note 4
 
 
 [20]
 430 F.2d 105
 
 
 [21]
 Decisions dealing with parole revocations and reaching a similar conclusion in that setting are: People ex rel. Menechino v. Warden, Green Haven St. Pris., supra, note 17, 267 N.E.2d 242; United States ex rel. Bey v. Connecticut State Bd. of Par., 443 F.2d 1079 (2d Cir., 1971), judgment vacated and cause remanded for dismissal as moot, 40 L.W. 3181; Warren v. Michigan Parole Board, 23 Mich.App. 754, 179 N.W.2d 664 (1970); Goolsby v. Gagnon, 322 F.Supp. 460, 466 (E.D.Wis.1971). Contra: Bearden v. South Carolina, 443 F.2d 1090, 1093 (4th Cir., 1971); Morrissey v. Brewer, 443 F.2d 942, 950 (8th Cir., 1971); In re Tucker, 95 Cal.Rptr. 761, 486 P.2d 657 (1971)
 
 
 [22]
 "The probation revocation proceeding, in other words, involves exactly the same kind of problem as is involved in the criminal trial itself . . . the ascertainment of historical events about which there may be some dispute and the consideration of those events against a standard of conduct to which the probationer is expected to adhere. The inability of the lay-probationer to adequately protect himself in such a context would seem just as pronounced as it is at the trial itself." A.B.A. Standards, "Probation," Tentative Draft, p. 69
 
 
 [23]
 351 F.2d 564 (1965)
 
 
 [24]
 This opinion has been circulated among all the judges of this court in regular active service, and a majority has voted not to rehear in banc the question of overruling Brown