In the Matter of MELVIN RICHARDSON, Respondent, *v.* NEW YORK STATE BOARD OF PAROLE, Appellant.

First Department, March 22, 1973.

---

180

*Hillel Hoffman* of counsel (*Samuel A. Hirshowitz* and *David Berman* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellant.

*William E. Hellerstein* and *Joel Berger* for respondent.

STEUER, J. Petitioner was convicted of grand larceny in the second degree on February 23, 1971, and sentenced to an indeterminate sentence not to exceed three years. After he had served 11 months the respondent Board of Parole released petitioner from Great Meadow Correctional Facility to its own custody. Some three months later he was arrested by his parole officer for violating the terms of his parole. Shortly thereafter he was sent to State Prison at Ossining.

On May 19, 1972, petitioner commenced this article 78 proceeding, claiming that his constitutional rights had been violated. While the proceeding was pending the respondent conducted a revocation hearing at which petitioner was represented by counsel. Following the hearing petitioner's parole was revoked. Special Term vacated the revocation and directed respondent to hold a preliminary hearing, deeming this to be mandated by the holding of the United States Supreme Court in *Morrissey* v. *Brewer* (408 U. S. 471). In addition, Special Term made certain directions in regard to the preliminary hearing.

In *Morrissey* two parolees had their paroles in the State of Iowa revoked. They brought a proceeding in the Federal courts, challenging the action of the State by way of writ of habeas corpus. The District Court and the Federal Court of Appeals

denied the writ. The Supreme Court first noted that while the State contended that a revocation hearing had been held and that the petitioners had admitted the acts claimed to constitute the violation of parole conditions, those facts did not appear in the record and were not advanced in the courts below. The Supreme Court therefore determined the matter in the factual aspect which the record presented, as if there had been no hearing at all. The opinion, after determining that some hearing was required, went on to prescribe the minimum standards which would accord with due process. The basic requirement is a revocation hearing. As we are not concerned on this appeal with the revocation hearing itself, it is unnecessary to discuss the requirements of such a hearing at this time. The court took note of the fact there is customarily a time lag between the date of arrest and the revocation hearing, and that a period of two months would not be an unreasonable interval. It went on to provide a safeguard against incarceration during this interval without there being some determination that there was reasonable cause for the arrest. Reasonable cause would be grounds for a reasonable belief that there were parole violations of a nature that would warrant revocation. Here again, at this point, it is unnecessary to consider the standards that would amount to due process in such a hearing.

The significant factor on this appeal is that the preliminary hearing has two purposes — first to determine whether further proceedings are warranted, and second to justify incarceration until a final determination on a formal revocation hearing can be had. The revocation hearing is not made conditional on the preliminary hearing; and obviously unless the revocation hearing resulted in a determination that the violation which it was reasonable to believe had been committed had, in fact, been committed, there would not be grounds for revocation. It would follow that where there has been a revocation hearing at which it has been found in accord with due process that there has been a violation, a subsequent preliminary hearing is purely supererogatory, and its absence under these circumstances violates no right of the parolee. And that is precisely what the Supreme Court decided in *Morrissey*.

It will be recalled that in *Morrissey* the record did not reveal whether there had been revocation hearings or not. In view of that the case was remanded to the District Court to make findings on what revocation procedures were actually had. And here is the significant direction (p. 490): "If it is determined that petitioners admitted **parole** violations to the Parole **Board,**

as Iowa contends, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter." Clearly if the District Court found that there was a revocation hearing which resulted in findings sufficient to sustain revocation, the absence of a preliminary hearing did not vitiate the determination.

A brief mention must be made of certain other facets of this proceeding. This is not a holding that the preliminary hearing provided for in *Morrissey* may be dispensed with or evaded. If it is not accorded promptly, an affected parolee may enforce it by appropriate application. It may, however, be obviated if the board proceeds immediately upon a final revocation hearing, as *Morrissey* provides that only where there is a time lag is a preliminary hearing an element of due process. Furthermore, among the prescriptions of what would constitute a fair preliminary hearing is that it be held at or near the place of alleged violation or arrest. In the instant case Special Term decided that the hearing should be in the City of New York. What is " reasonably near " depends on a consideration of all the circumstances. It would obviously not be feasible to hold the arrested parolee in a detention facility at a distance from the place of preliminary hearing, and if the latter place is New York City he would have to be lodged in one of the local jails. As the number of parolees and alleged parole violators is not inconsiderable, to retain them in the local correctional facilities would prove an additional burden on those overcrowded institutions. This factor should not be overlooked in deciding what is " reasonably near."

Considerable argument has been devoted to whether or not *Morrissey* is retroactive. The court answered that (p. 490): " The few basic requirements set out above, which are applicable to *future* revocations of parole, should not impose a great burden on any State's parole system." (Emphasis supplied.)

Lastly, petitioner in his brief is critical of the validity of the revocation hearing. Obviously this was not before Special Term, as the matter was submitted before the hearing took place. Nor is it likely that the objections could have been passed on at Special Term. Nor are they properly before us. We have not passed on this matter and our decision is without prejudice to any proceeding that petitioner may care to bring to review that determination.

Judgment entered New York County October 4, 1972 (SPIEGEL, J.) annulling revocation of petitioner's parole should be reversed on the law and petition dismissed without costs; and the appeal

from the order entered November 2, 1972, denying reargument should be dismissed.

MURPHY, J. (dissenting). We disagree and vote to affirm.

In order to fully understand what has heretofore transpired, we believe a fuller recitation of the underlying facts and sequence of events than appears in the majority's opinion is essential. In February, 1971, petitioner was convicted of grand larceny in the second degree and sentenced to an indeterminate term of imprisonment not to exceed three years. In January, 1972, he was conditionally released from the Great Meadow Correctional Facility in Comstock under parole supervision. On April 13, 1972, he was arrested at the New York City office of the Parole Board for allegedly making false reports to his parole officer regarding his residence and employment and was held at the Manhattan House of Detention until April 20, 1972 when he was transferred to the Ossining Correctional Facility. On May 5, 1972, petitioner was declared delinquent by a member of the board of parole who acted solely on the written report of petitioner's parole officer. The procedures followed to this point were seemingly in accord with the applicable statute and regulations. (Correction Law, § 216; 7 NYCRR 1.17.) All that now remained to complete the process was to hold a hearing before a three-member panel. (Correction Law, § 212, subd. 7; 7 NYCRR 1.19.) Petitioner, however, perhaps anticipating what was to come, believed himself entitled to more. On May 19, 1972, he commenced the instant article 78 proceeding in which he asserted that the above-outlined procedures were constitutionally defective since he had not been served with advance notice of the charges and had not been granted a preliminary hearing where, with the aid of counsel, he could have the opportunity to contest the charges against him and demonstrate the lack of probable cause to believe he had violated the conditions of his release.

On June 29, 1972, while this proceeding was still *sub judice,* the Supreme Court handed down its landmark decision in *Morrissey* v. *Brewer* (408 U. S. 471). After rejecting the supposition that the liberty of a parolee was merely a privilege which the State could grant and then withdraw as it saw fit, and though holding that a parole revocation was not part of a criminal prosecution and that a parolee was therefore not entitled to the full panoply of rights due thereon, the court detailed the minimum procedural safeguards which due process requires before **parole** may be revoked.

Cognizant of the fact that there is generally a substantial time lag between a parolee's arrest for violating the conditions of his parole and the ultimate determination of whether or not to revoke parole, the Supreme Court discussed the requirements for each stage of the process.

Briefly stated, "as promptly as convenient" after a parolee has been arrested and "while information is fresh and sources are available" someone not directly involved in the proceedings must make some "minimal inquiry" near the place where the parolee is arrested or the conditions of his parole were violated to ascertain if there is probable cause to believe that the imposed parole conditions have been breached. The determination made by such hearing officer, though it may be informal, must state the reasons for such determination and the evidence relied on. At the more formal hearing, the neutral and detached factfinders must evaluate the contested facts and decide whether they warrant revocation and then state, in writing, the evidence relied on and the reasons for revoking parole. At both hearings the parolee is entitled to notice of the claimed violations, disclosure of the evidence against him, an opportunity to speak and present his own witnesses and evidence and the right to confront adverse witnesses (unless good cause exists, for security reasons, not to allow such confrontation). While the court did not reach or decide the question of whether a parolee is entitled to counsel at either hearing, the highest court of this State has already decided that a parolee is constitutionally entitled to counsel at the revocation hearing. (*People ex rel. Menechino* v. *Warden,* 27 N Y 2d 376.)

On August 3, 1972, over five weeks after *Morrissey* was decided and before Special Term rendered its decision on petitioner's application, respondent held, over petitioner's counsel's objection, a formal revocation hearing at the Ossining Correctional Facility at which only petitioner and his parole officer testified. None of the witnesses who gave adverse information to the parole officer was called to testify, despite the fact that some had executed affidavits repudiating the parole officer's account of their statements. At the conclusion of the one-day hearing, and without any written statement of its reasons or of the evidence it relied on, the three-member Parole Board panel concluded that the violation [*sic*] had been sustained, revoked petitioner's conditional release and directed that he be held until the maximum expiration of his sentence (i.e., April 5, 1973). The Attorney-General notified Special Term that such hearing had been held and of the determination made that **day, but it is**

unlikely that such information reached Special Term before its decision, dated August 4, 1972, was released. On September 26, 1972, and before entry of any judgment hereon, the Attorney-General applied for "reargument" and submitted a copy of the minutes of the revocation hearing. On October 4, 1972 the judgment was entered below which, *inter alia,* rescinded the August determination as well as the prior declaration of delinquency and directed respondent to commence its proceeding *de novo* and to accord petitioner not only the minimal due process requirements laid down in *Morrissey* but, also, the assistance of counsel. By order entered November 2, 1972, respondent's "reargument" motion was denied.

Initially, we note our disagreement with the majority's dismissal of the appeal from the afore-mentioned order. While characterized by both respondent and Special Term as reargument, the application sought a rehearing on the basis of the minutes of the revocation hearing which were not part of the original submission. Unlike the denial of leave to reargue, an order denying leave to renew, or for a rehearing, is appealable. (*Richter* v. *Brookboro Bldg. Mgt. Corp.*, 25 A D 2d 448; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5701.24.)

Although the majority concludes that a preliminary hearing, would be "purely supererogatory" under the circumstances of this case if the determination made after the formal revocation hearing was conducted in accord with due process and established the existence of probable cause to believe that a parole violation had been committed, it implies that *Morrissey,* which is stated to govern "future revocations of parole" is inapplicable to the present proceedings. We would hold to the contrary on both counts.

At the outset it should be stressed that petitioner was charged with only technical, as distinguished from substantial, violations of the conditions of his release. (Cf. *People ex rel. Maggio* v. *Casscles,* 28 N Y 2d 415.) Moreover, petitioner is not now seeking the benefit of a recent decision in order to reopen a concluded proceeding. (Cf. *People ex rel. Maggio* v. *Casscles, supra.*) He requested in this very proceeding substantially the same constitutional rights the Supreme Court in *Morrissey* held he was entitled to (except for the assistance of counsel). And even if he had not asserted those rights before *Morrissey* was decided, there is ample authority for the proposition that newly enunciated constitutional rights are applicable to still pending matters (see, for example, *Johnson* v. *New Jersey,* 384 U. S. 719, holding that the guidelines set down in *Escobedo* v. *Illinois,*

378 U. S. 478, and *Miranda* v. *Arizona*, 384 U. S. 436, apply to trials commenced after those decisions were announced and *Stovall* v. *Denno*, 388 U. S. 293, applying the rule established in *United States* v. *Wade*, 388 U. S. 218 and *Gilbert* v. *California*, 388 U. S. 263 to future confrontations for identification purposes) although not given full retroactive effect (as, for example, in *Gideon* v. *Wainwright*, 372 U. S. 335, and *Ivan* v. *City of New York*, 407 U. S. 203). In the proceeding before us, while the preliminary steps may have antedated *Morrissey*, the hearing and revocation of parole occurred subsequently.

Accordingly, the questionable decision of the Parole Board to conduct a full revocation hearing after *Morrissey* was decided, and during the pendency of this proceeding, should not now serve as the predicate for denying petitioner his timely requested right to a preliminary hearing with all the due process safeguards announced in *Morrissey*.

To merely state, as does the majority (after first holding that we are not to concern ourselves therewith), that a revocation hearing conducted in accord with due process obviates the need for a preliminary hearing completely overlooks, in our opinion, the substantial rights granted a parolee in *Morrissey*. While it may be true that a revocation hearing is not made conditional on a preliminary hearing, we do know that parole boards, like petit jurors, do not act *sua sponte*. Before a hearing is held to decide whether or not a parolee should be reincarcerated, a determination must be made that there is probable cause to believe that a condition of parole has been violated. It is only after the second question is answered affirmatively that the first arises. (*Morrissey* v. *Brewer, supra,* pp. 479–480.) Moreover, and in any event, we can no more accept the majority's conclusion that the final determination here cures the procedural defects than we can the heretofore rejected contention that an otherwise unlawful arrest is justified by what a subsequent search discloses (cf. *People* v. *Malinsky*, 15 N Y 2d 86) or that an otherwise sustainable conviction can stand in the face of an improperly obtained indictment (cf. *United States* v. *Estepa*, 471 F. 2d 1132 [2d Cir., 1972]). In *Coe* v. *Armour Fertilizer Works* (237 U. S. 413, 424) the Supreme Court said: "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." Obviously with even greater force would such language apply to the taking of one's liberty.

It is, of course, true that the majority in *Morrissey,* because of the absence of an adequate record, remanded the cases with directions to make findings on the procedures followed by the Iowa Parole Board. One instruction given is quoted by the majority. Omitted, however, is the second instruction which immediately follows (p. 490): " If the procedures followed by the Parole Board are found to meet the standards laid down in this opinion that, too, would dispose of the due process claims for these cases."

We, however, are not so uninformed. The full record of what transpired below is presently before us. Thus, we know that (a) petitioner did not admit to violating any of the conditions of his parole and (b) the proceedings followed by the Parole Board did not meet the standards laid down in *Morrissey.*

Finally, even if we accept, *arguendo,* the contention that a properly conducted revocation hearing renders this proceeding moot, we do not agree that we are precluded from examining into the proceedings at the revocation hearing in order to make such determination solely because said proceeding is not technically before us. The minutes were submitted to Special Term in connection with respondent-appellant's motion for reconsideration and are, in our judgment, properly part of the record on this appeal. A perusal thereof clearly discloses that the *Morrissey* requirements were not met. The only adverse testimony received thereat was from the parole officer. None of the witnesses who gave him the damaging information on which his original decision to arrest petitioner was based was produced for confrontation. The Parole Board's decision sustaining the violation does not approach the required written statement mandated by *Morrissey.* In short, on the entire record before us, it is patently clear that petitioner's constitutionally protected conditional liberty was retaken by procedures which did not accord him due process. Under the circumstances here presented, our judicial obligation is not fulfilled by merely suggesting to petitioner that appropriate relief may be obtainable in another proceeding instituted elsewhere.

To now require petitioner to commence another proceeding in another court to vindicate his constitutional rights when all of the necessary parties and papers are before us would not only be severely prejudicial to petitioner, but would, in our view, result in an unwarranted waste of judicial time and effort.

Before concluding, we deem it appropriate to recall the pertinent observation made by Chief Judge Fuld in *Menechino* and repeated in *People ex rel. Silbert* v. *Cohen* (29 N Y 2d 12, 17):

" ' The parole system ' * * * ' is an enlightened effort on the part of society to rehabilitate convicted criminals. Although few circumstances could better further that purpose than a belief on the part of such offenders in a fair and objective parole procedure, hardly anything could more seriously impede progress toward that important goal than a belief on their part that the law's machinery is arbitrary, too busy or impervious to the facts. The desired end can become a reality only by requiring obedience to the demands of due process * * *.' "

In light of the foregoing, the judgment and the order appealed from should be affirmed.

McGIVERN and NUNEZ, JJ., concur with STEUER, J.; STEVENS, P. J., and MURPHY, J., dissent in an opinion by MURPHY, J.

Judgment, Supreme Court, New York County, entered on October 4, 1972, reversed on the law, without costs and without disbursements, and the petition dismissed.

Appeal from order of said court, entered on November 2, 1972, dismissed, without costs and without disbursements.