Henry F. Werker, J.
Under date of January 15, 1973, the above-named David Walczak, an inmate of the Coxsackie Correctional Facility, addressed a communication to the Court Clerk of this court which purported to be a petition for a writ of habeas corpus. The document was typewritten, signed by the inmate and sworn to by him before a notary public. This document was forwarded to the Attorney-General for his attention on January 24,1973. By notice of motion dated February 5,1973 and returnable on February 15, 1973, the Attorney-General moved to dismiss the application for the writ. This court assigned Daniel K. Lalor, Public Defender of Greene County, to answer the motion and on March 14, 1973, received a petition for a writ which is the subject matter of the second petition.
There is no doubt that the original application fails to comply with the requirements of CPLR .7002 (subd. [c], pars. 1, 3, 5, 6). Since the applicant acted pro se with respect to such petition, the court entertained the application, regarding those requirements as formal and technical in nature.
The thrust of the original petition is that the petitioner was not granted a preliminary hearing as required by the United States Supreme Court in Morrissey v. Brewer (408 U. S. 471). The Attorney-General’s motion to dismiss, aside from the technical grounds mentioned, bases his motion to dismiss upon the merits on the ground that the petitioner fails to state facts sufficient to entitle him to the relief sought.
The facts are that the petitioner was received in custody pursuant to two concurrent four-year reformatory sentences for unauthorized use of a motor vehicle on November 18, 1969 and unauthorized use of another motor vehicle on January 25, 1970. Sentence was imposed by the Buffalo City Court on March 26, 1970.
*370 Petitioner was thereafter released on parole by the respondents oñ December 30, 1971.
On June 27, 1972, petitioner was arrested in Buffalo for unauthorized use of a motor vehicle. He was arraigned on that date, pleaded guilty, and the case was adjourned to July 10, 1972. He admitted during June 28 and July 17 interviews at the Erie County Jail that he had taken, the automobile. The case, however, was dismissed for defective evidence and a July 6, 1972 declaration of delinquency was canceled on July 26, 1972 and petitioner was taken home on July 28, 1972.
On August 6,1972 at 4:30 a.m., petitioner was again arrested for unauthorized use of a motor vehicle and three traffic violations (no registration, no operator’s license and no insurance). He was arraigned before Honorable M. Dolores Denman in the Buffalo City Court on August 6, 1972, pleaded guilty to the charges and released to his mother’s custody. The matter was adjourned by the court to August 24, 1972.
Petitioner was again arrested on August 8, 1972 at 2:00 a.m. by the Buffalo Police, charged with the unauthorized use of a motor vehicle and six traffic violations (no registration, no operator’s license, no insurance, speeding at 50 miles per hour in a 30 mile per hour zone, and passing two red lights). He was again arraigned on August 8, 1972 before the Honorable M. Dolores Denman in Buffalo City Court, pleaded not guilty and the matter was adjourned until August 24, 1972.
The parole officer was not aware of these arrests until petitioner ’s mother so informed him on August 10. Petitioner, when interviewed by the parole officer on that day, refused to make any statement concerning these arrests. On October 3, 1972, when he was again interviewed by that officer, he admitted the arrests.
On October 3,1972, petitioner again appeared in Buffalo City Court before Honorable James L. Kane and pleaded to unauthorized use of a motor vehicle and three traffic violations (no registration, no operator’s license and no insurance). Sentencing was set for October 18, 1972.
On October 18, 1972, petitioner was sentenced to time served and he was returned to the custody of the New York State Department of Correctional Services. Petitioner was returned to that department on November 9,1972 and met with the Parole Board for a parole revocation hearing on November 30, 1972. The board, after hearing, revoked parole.
In Morrissey v. Brewer (408 U. S. 471, 485, supra) the Uftited States Supreme Court has mandated a preliminary hearing as *371 promptly as convenient after the parolee has been arrested for violation of parole. “ Such ah inquiry should be seen as in the nature of a 6 preliminary hearing ’ to determine whether there is probable cause or reasonable ground to believe that the arrested parole© has committed acts which would constitute a violation of parole conditions. (Cf. Goldberg v. Kelly, 397 U. S. at 267-271.) ”
In the cases of Morrissey and Booker, neither of the parolees had been convicted of a crime While they were on parole. The reports were made by a parole officer to a board recommending that parole be revoked by reason of alleged parole violations. In People ex rel. Menechino v. Warden, Green Haven State Prison (27 N Y 2d 376) the alleged parole violation was not the commission and conviction for a crime committed while on parole but a technical alleged associating with individuals having a criminal record and giving false and misleading information to a parole officer.
/These cases are to be distinguished from the present case where the defendant has been convicted of a subsequent crime before the parole hearing. The first petition is denied for the reasons stated.
Although the second petition is grounded upon the lack of the preliminary hearing, it is also based upon the lack of counsel at the parole revocation hearing. This petition is also denied on the authority of People ex rel. Maggio v. Casscles (28 N Y 2d 415) wherein Associate Judge Bxjrke said (p. 418): “ Perhaps more important than a statement of what a parole revocation is, is a recognition of what it is not. It is not a criminal trial. A parole revocation hearing is in the nature of an administrative proceeding (People ex rel. Menechino v. Warden, supra, p. 382) to determine whether a parolee has violated the conditions of his parole (Correction Law, § 212, subd. 7). Our holding in Menechino is designed to assure ‘ that the board is accurately informed of the facts before it acts ’ (27 N Y 2d, at p. 383). Thus, although the appointment of counsel is a sine qua npn, we should be more concerned with the testing of the integrity of the fact-finding process. If the parole hearing record clearly demonstrates compliance with due process requirements, a new hearing should not be ordered. The conviction of another crime or an admitted and unexplained substantial violation of the conditions of parole is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary.”
It is also denied on authority of People ex rel. Sardo v. Zelker (38 A D 2d 569) and People ex rel. Ellington v. Zelker (39 A D 2d 757).
*372 As was said by Chief Judge Fuld in People ex rel. Menechino v. Warden, Green Haven State Prison (27 N Y 2d 376, 383, supra): “It is difficult, if not impossible, to anticipate all the questions that may arise to confront the Board of Parole and the courts — and we shall not even address ourselves to them. We prefer to have them answered as they are actually presented on a case-by-case basis.”
Here the Board of Parole had all the facts with respect to the subsequent conviction before it. It is difficult to see what purpose the appointment and appearance of counsel could add to the parole revocation hearing under these circumstances. The jPublic Defender similarly has had all of the records of the Board of Parole including the parole officer’s reports and the minutes of the revocation hearing made available to him. There is no legal justification for the convening of a new hearing or the issuance of a writ.
In People ex rel. Maggio v. Casscles (28 N Y 2d 415, 417) it was said: “We conclude that all the protection necessary may be afforded to prisoners by granting new parole hearings only to those who can demonstrate, with the aid of counsel in the Supreme Court, that the determination made at the revocation hearing failed to meet due process standards.”
The court here finds that the standards of due process have been met. The petition is consequently denied.