THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD HUNT, Defendant-Appellant.

(No. 74-184;

Third District—June 26, 1975.

James Geis and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

C. Brett Bode, State's Attorney, of Pekin (Jay Janssen, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant was originally charged and convicted of burglary, and on June 23, 1971, was granted probation for 5 years, on condition that he would not violate any penal statute or ordinance of any jurisdiction.

On August 31, 1973, a petition to revoke probation was filed charging that Hunt had, on May 27, 1973, violated a condition of his probation by committing the offenses of burglary and theft. Hunt was subsequently arrested on September 5, 1973, bail was set at $5,000 and the matter continued to September 10, 1973, for arraignment. The public defender was appointed because of defendant's indigency, and the matter continued to September 14, 1973, at which time defendant was arraigned and entered a plea of not guilty, after being furnished a copy of the charges contained in the petition. Both the defendant and his attorney agreed that the revocation hearing would be heard on September 27, 1973. On that date counsel for defendant appeared but the defendant did not appear. Hunt's bail bond was thereafter ordered forfeited, and an amended petition to revoke probation, charging the additional violation of bail bond, was filed. Hunt was subsequently apprehended on February 7, 1974, was arraigned, and remanded in custody.

Hunt's probation revocation hearing was held on March 4, 1974, and concluded on March 7, 1974, with the court finding that a preponderance of the evidence supported the charges that defendant had committed the theft and violation of bail bond. Following presentence report and sentencing hearing, Hunt was sentenced to a term of from 5 to 15 years.

The only issue to be decided on appeal is whether or not the trial court's failure to hold a preliminary hearing after defendant was arrested for violating his probation is reversible error.

Defendant contends that the failure to hold a preliminary hearing denied him due process, and cites two recent United States Supreme Court decisions. In *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 36 L.Ed.2d 656, 661, 662, 93 S.Ct. 1756 (1973), the court said:

> "Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a

preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer*, 408 U.S. 471, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972)."

*Gagnon* was decided on May 14, 1973, and the revocation hearing in the instant case was held almost a year later. In *Gagnon* it was held that a defendant is entitled to due process of law in proceedings to revoke probation. It has been recognized that the concept of due process is flexible, but "To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L.Ed.2d 484, 494, 92 S.Ct. 2593, 2600.

To understand the *Gagnon* rule, it is necessary to look at the facts which led up to the United States Supreme Court decision. Gerald Scarpelli had pled guilty in July, 1965, to a charge of armed robbery in Wisconsin. The trial judge sentenced him to 15 years' imprisonment, but suspended the sentence and placed him on probation for 7 years in the custody of the Wisconsin Department of Public Welfare. At that time, Scarpelli signed an agreement, specifying the terms of his probation and a "Travel Permit and Agreement to Return" allowing him to reside under supervision in Illinois pursuant to an interstate compact. On August 5, 1965, he was accepted for supervision by the Adult Probation Department of Cook County, Illinois; on August 6, 1965, he was apprehended with another in the course of the burglary of a house. Scarpelli was apprised of his constitutional rights, and admitted the crime but later asserted that his statement was made under duress and was false. On September 1, 1965, Scarpelli's probation was revoked by the Wisconsin Department of Public Welfare without a hearing, and on September 4, he was incarcerated in the Wisconsin State Reformatory to begin serving the 15-year sentence previously suspended. At no time was Scarpelli given a hearing or access to counsel.

Three years later, on December 16, 1968, Scarpelli applied to the Federal District Court for a writ of habeas corpus, and it was held that revocation without a hearing and counsel was a denial of due process. (317 F.Supp. 72 (E.D. Wis. 1970).) The court of appeals affirmed (454 F.2d 416 (7th Cir. 1971)), and the United States Supreme Court granted certiorari.

In reaching its decision, the supreme court analyzed the decision in *Morrissey*, decided in 1972, which dealt solely with the constitutional requirements of parole revocation procedures. *Morrissey* stated that, with

respect to the preliminary hearing, the parolee is to be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice also must specify the alleged violations. At the hearing the parolee must be given an opportunity to appear and speak with the right to confront and examine persons who have given adverse information.

■■ The preliminary hearing prescribed in *Morrissey* will hereafter be called a prerevocation hearing, to distinguish it from the usual preliminary hearing in a criminal proceeding in Illinois. We believe it important to note that a prerevocation hearing is distinguishable in principle from the usual preliminary hearing because the existence of probable cause is not necessary to establish *jurisdiction* over the probationer, since the court has a continuing jurisdiction over those granted probation until the probation term has been completed.

We are, of course, bound by the requirements imposed by the supreme court in *Morrissey* and *Gagnon* to the extent that they establish minimal due process requirements in parole revocation proceedings. Although we are not confronted with a revocation of parole but rather with proceedings for the revocation of probation granted after conviction, such proceedings are subject to the same guarantees of due process.

The case before us differs factually from *Gagnon* in that the defendant here received a fair hearing, with appointed counsel, before a judge who revoked the defendant's probation only after a complete hearing.

The Chief Justice stated the issue in *Morrissey* to be "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." 408 U.S. 471, 472, 33 L.Ed.2d 484, 489, 92 S.Ct. 2593, 2596. Despite the inherent limitations of this statement, the court proceeded to reach and decide far more extensive issues. Parole revocation is divided into two important steps: arrest and preliminary hearing, and the revocation hearing itself.

The United States Supreme Court in *Morrissey* chose not to prescribe the precise processes which are due a parolee before he may be deprived of his restricted liberty, but it set forth minimum requirements under the fourteenth amendment. "We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding *the minimum requirements of due process*." 92 S.Ct. at 2604. Our supreme court, in considering *Gagnon v. Scarpelli* in *People v. Beard*, 59 Ill.2d 220, 226, 319 N.E.2d 745, 747, said:

"Unlike [the case of *Gagnon*,] our present statutory provisions deal-

ing with probation revocation require that judicial proceedings be conducted to determine the fact of the violation alleged in the revocation petition. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4 (b).) At these proceedings 'The State has the burden of going forward with the evidence and proving the violation by the preponderance of the evidence. The evidence shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel.' (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(c).) A defendant may appeal an adverse decision revoking probation. (Supreme Court Rule 604(b), as amended effective September 1, 1974.) * * * We conclude that the defendants have been afforded procedural safeguards comportable with those mandated in *Gagnon v. Scarpelli* which fully insure the interest of a probationer 'that his liberty is not unjustifiably taken away and the [interest of] the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.' 411 U.S. at 785, 36 L.Ed.2d at 663-664."

We note that as reason for a prerevocation hearing the court stated in *Morrissey*:

"There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked. Additionally, it may be that the parollee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. 471, 485, 33 L.Ed.2d 484, 496, 92 S.Ct. 2593, 2602.

In *Richardson v. New York State Board of Parole*, 41 App. Div. 2d 179, 341 N.Y.S.2d 825 (1973), the court held that none of a parolee's rights had been violated when, without a preliminary hearing, parole was revoked at a hearing held only 19 days after the arrest. The court noted that the need for a *Morrissey* preliminary hearing may be "obviated if the Board proceeds immediately upon a final revocation hearing." (341 N.Y.S.2d 825, 827; see also *Walcyak v. Department of Correctional Services*, 73 Misc.2d 369, 342 N.Y.S.2d 146 (1973), where the final revocation hearing was held within 21 days of the arrest of the parolee.) *Morrissey* provides: "The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two

months * * * would not appear to be unreasonable." 408 U.S. 471, 488, 33 L.Ed.2d 484, 498, 92 S.Ct. 2593, 2605.

■■ The revocation hearing in the case at bar was scheduled to be held on September 27, 1973, 3 weeks after his arrest on September 5, 1973. This date was agreed to by both the defendant and his counsel, on September 14, 1973, when the defendant entered a plea of not guilty. Having been placed on bail previously, the defendant failed to appear for trial on September 27, 1973, and, after being called three times without appearing, the defendant's bond was forfeited and a warrant issued for his arrest. According to the record, judgment on the recognizance was entered on November 16, 1973, against the defendant for failing to appear on September 27, 1973, for "a hearing on the petition charging violation of probation."

In *People v. De Simone*, 9 Ill.2d 522, 533, 138 N.E.2d 556 (1956), the court said:

"[A]n accused shall have the right to appear and defend in person in all criminal prosecutions.

"The constitutional privilege relied upon was conferred for the benefit and protection of an accused. Like many other rights, however, it may be waived. Thus where a defendant voluntarily absents himself from a courtroom and refuses to be present for further proceedings he is deemed to have waived his right and cannot claim *any advantage* on account of his absence." (Emphasis added.)

In *People v. Steenbergen*, 31 Ill.2d 615, 203 N.E.2d 404 (1964), *cert. denied*, 382 U.S. 853, 15 L.Ed.2d 92, 86 S.Ct. 104, the defendant was free on bail and was absent from trial despite the fact that he knew when his trial would begin. The court stated:

"The right to be present and to meet the witnesses are personal rights which defendant may also waive. (*People v. Harris*, 302 Ill. 590, 135 N.E. 75.) Defendant, by being voluntarily absent, waived his right to be present at the trial; it follows from this that he thereby also waived his right to meet the witnesses face to face." 31 Ill.2d 615, 619.

In our judgment, the rule announced in *Morrissey* is one of reasonableness, which requires a balancing of all relevant circumstances. We recognize that a probationer may expressly or by implication waive the time within which the State must proceed at the revocation hearing.

■■ Due process does not require that a probationer benefit from the denial of a timely prerevocation hearing, but only that no unfairness result therefrom. Accordingly, a probationer whose probation has been revoked after a properly conducted revocation hearing is not entitled to

have the revocation set aside unless it appears that the failure to accord him a prerevocation hearing resulted in prejudice to him at the revocation hearing.

The defendant urges that the failure to hold a preliminary hearing below was not harmless error. Appellate courts have often considered the measure of prejudice resulting from a lack of compliance with Federal constitutional mandates in criminal proceedings. Prejudice is not presumed merely because of a failure to comply, and in particular instances denials of constitutional proportions may be deemed harmless.

It is manifest that in the instant case defendant cannot establish that he was prejudiced by the denial of a timely prerevocation hearing. Defendant contends that the violation of bail bond was partially brought about by the trial court's failure to hold a preliminary hearing on the burglary and theft charges. Defendant's brief states: "Hunt does not challenge the trial court's determination at the revocation hearing that a preponderance of the evidence supported the theft charge because, in light of the overwhelming evidence supporting the violation of bail bond charge, the error occurring therein was harmless." He thus fails completely to demonstrate prejudice, and we can declare without reservation that the denial in this case was harmless beyond a reasonable doubt. See *Chapman v. California*, 386 U.S. 18, 24, 17 L.Ed.2d 705, 87 S.Ct. 824, 828.

We conclude that the defendant has been afforded procedural safeguards in substantial compliance with the requirements of *Gagnon v. Scarpelli*. Accordingly, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STOUDER, P. J., and ALLOY, J., concur.