THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDWARD A. KNOWLES, Defendant-Appellant.

Second District   No. 76-112

Opinion filed April 29, 1977.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Phyllis J. Perko and Stephen M. Deitsch, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Pursuant to negotiation with the State, the defendant entered a plea of guilty to a charge of robbery, and was placed on probation. The State subsequently filed various petitions for revocation of the defendant's probation and, after a hearing, his probation was revoked and he was sentenced to 4 to 12 years on the original charge. On appeal, the defendant contends that (1) the trial court erred in refusing to consider sentencing him as an addict pursuant to the Dangerous Drug Abuse Act; (2) that the failure to accord him a preliminary revocation hearing to determine probable cause denied him due process of law, and (3) that the trial court also denied him due process of law when it refused to grant him a credit against his sentence for the time he had spent on probation. We affirm.

The defendant and two accomplices were indicted for armed robbery and robbery. Defendant's plea of guilty to the robbery charge was entered at a hearing on August 7, 1972. At this hearing, the defendant testified that he had used heroin for 10 months while serving in the army in Viet Nam, but had gone "cold turkey" and stopped using heroin after returning to the United States. He further testified that his period of withdrawal lasted "about forty days," from June to July, or early August, of 1971. He said that he had used some barbiturates and marijuana during the withdrawal period, and had used heroin three or four times since that time, the last time being approximately three months prior to the hearing (which was in August of 1972). He stated that he was currently able to control his use of heroin. In answer to a leading question from his counsel he responded that he would like to pursue, while on probation, a course

of counseling to help him with "this problem that originated in Viet Nam."

The judge stated that he was "taking the defendant's word" as to what his involvement with heroin was in Viet Nam, as well as since his return, and that this was one of the reasons for his acceptance of the plea; the judge then placed the defendant on probation for three years.

In January of 1975, the State filed a petition for revocation of defendant's probation, charging that he had committed the offense of battery. On April 25, 1975, he was found guilty under the petition, but the trial court chose to hold him in contempt and impose a fine, rather than to revoke his probation. In April of 1975, while this petition was pending, the defendant sought treatment at a Veterans Administration hospital. The hospital report, which is part of the record herein, indicates that the defendant described himself as an "ex-heroin addict."

On May 29, 1975, the State filed another petition to revoke the defendant's probation, charging him with possession of a controlled substance (phencycliatine), possession of 2.5 to 10 grams of cannabis, and violation of curfew. On August 25, 1975, a supplemental petition was filed by the State, charging him with resisting a police officer. On August 26, 1976, the State was granted leave to file a second supplemental petition instanter. This petition charged the defendant with striking a police officer in the face with his fist, and violating curfew. Hearing on these petitions was then set for September 11, 1975. On September 11, 1975, new counsel was substituted for the defendant and the matter was continued to October 16, 1975. Motions and proofs were heard on October 16 and 22, 1975.

After hearing conflicting evidence presented by the State and on behalf of the defendant, the court ruled that the State had proven each of the allegations contained in the revocation petitions by a preponderance of the evidence. The court thereupon revoked the defendant's probation and set the matter for sentencing.

At the sentencing hearing, Doctor Dimitrios C. Georgiou, a physician and psychiatrist, testified for the defendant that he had had a 25-minute conference with the defendant a week before the hearing. He stated that the defendant told him that he was spending all of his money on drugs, and was currently using barbiturates. Dr. Georgiou further testified that defendant told him that he had used cocaine, marijuana and mixtures of barbiturates and alcohol somewhat earlier. The doctor expressed an opinion that the defendant was a drug addict, but admitted that his opinion was based mainly on what the defendant had told him. He admitted that he could not really tell the extent of the defendant's addiction, and that further examination would be necessary to even verify that defendant was an addict.

The defendant also testified at this sentencing hearing. He stated that he had not used heroin on a regular basis since returning from Viet Nam. He admitted that he was a barbiturate user, and said that he had suffered "withdrawal symptoms from barbiturates and rashes from nerves" since he was confined in jail, following his arrest after the filing of the State's second supplemental petition. He said that, when he checked into the Veterans Administration hospital in April, he complained of blackouts, nervousness and anxiety. He responded in the affirmative to leading questions by his counsel as to whether he wished to receive treatment for drug abuse, and whether he would participate in a drug program if permitted to do so by the court.

■■ In sentencing him, the court noted that the defendant had not filed a petition for treatment as a drug addict, but stated that the court had considered the matter anyway, since the question of drug addiction had been raised. The court first concluded that the defendant was ineligible for treatment under the Dangerous Drug Abuse Act, since he had been convicted of robbery. In view of the supreme court's subsequent decision in *People v. McCoy* (1976), 63 Ill. 2d 40, it is evident in retrospect that the trial court was not correct when it held that the defendant was ineligible because of his robbery conviction. However, the trial court went on to hold that even if defendant were eligible the court did not believe that defendant really was a drug addict, but was convinced that his claim of drug addiction was a mere ploy. The court noted that there had been no suggestion of drug addiction by the defendant until after he had been found guilty of violating his probation and just prior to sentencing. The court also held that in view of the defendant's "aggressiveness toward individuals, which is uncontrolled," and his "utter disregard" for orders of the court, "probation has to be denied to protect the public." Finally, the trial court held that, to be effective, any constructive treatment for rehabilitation would have to take place while the defendant was incarcerated.

The defendant has asserted broadly that the trial court improperly refused to consider sentencing him as an addict pursuant to section 10 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.10), and more specifically that the trial court erred in failing to order an examination by the Department of Mental Health. He further argues that the statute mandates an examination in cases where a defendant elects to undergo treatment or is certified for treatment.

The trial court was not under a mandate to order an examination in this case, since the defendant never requested treatment under the Act in a manner sufficiently definite to constitute an election. The defendant filed no petition for treatment, and never stated that he was a drug addict, although he indicated that he was a user of barbiturates who had been an

addict while in Viet Nam. Counsel for defendant argued that the defendant needed medical and possibly psychiatric treatment, and suggested enrollment in a drug program. In view of the seriousness of an election under the Act, which can carry with it confinement in an institution operated by the Department of Mental Health, it seems clear that the legislature could not have intended that such general answers to leading questions and statements of counsel, would or should be deemed to constitute an election. *People v. White* (1973), 10 Ill. App. 3d 566 (abstract).

■■ Further, there was no error in the court's failure to offer an election. This case is clearly distinguishable from such cases as, *e.g., People v. Robinson* (1973), 12 Ill. App. 3d 291; *People v. Smith* (1974), 23 Ill. App. 3d 387; *People v. Dill* (1974), 23 Ill. App. 3d 503; *People v. Miller* (1976), 43 Ill. App. 3d 290, where the court had reason to believe that the defendant was an addict, but the record failed to show that the court had given consideration to the Act, and exercised its discretion regarding it. The court in the instant case did not have "reason to believe" that the defendant was an addict, and the defendant never stated that he was an addict. The defendant, in fact, testified that he no longer used heroin on a regular basis. He stated that he had recently used barbiturates, but there was no evidence that this use amounted to addiction, other than the defendant's unsupported and conclusionary statements about "withdrawal symptoms from barbiturates and rashes from nerves." The record discloses that the defendant spent the first nine months of his term of probation in jail, yet there is no evidence that he suffered any withdrawal symptoms during this extended period. The only evidence of addiction was the opinion of Dr. Georgiou, who testified at the sentencing hearing, which was based largely upon statements made to him by the defendant during a single, brief examination. Under the facts of this case, such statements and conclusions by the defendant did not suffice to give the court "reason to believe" that he was an addict. See *People v. Belleville* (1974), 20 Ill. App. 3d 1088, 1089.

■■ Further, there is more than ample evidence here that the court, in spite of its belief that the defendant was not eligible to make an election, gave careful consideration to the question of whether or not the defendant, and society, would benefit from such an election. The court's finding that incarceration was necessary in order to protect the public seems eminently reasonable in view of the extremely antisocial nature of the defendant's conduct, which included instances of physically resisting and assaulting police officers. Similarly, the court's holding that the defendant lacked the self discipline necessary to successfully complete a drug program outside of the penitentiary, was more than justified by the defendant's numerous and blatant violations of the law and the terms of

his probation. In this case, the refusal to sentence the defendant as an addict under the Dangerous Drug Abuse Act was the result of a learned and reasoned exercise of discretion by an able and experienced trial judge.

The defendant has also maintained that the failure to accord him a preliminary hearing prior to his final revocation hearing violated his right to due process of law, as set forth in *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756.

In *Gagnon,* the court stated that:

> "Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer, * * * [408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593]." (411 U.S. 778, 782, 36 L. Ed. 2d 656, 661-62, 93 S. Ct. 1756.)

In *Morrissey,* the court set forth the constitutional requirements of parole revocation procedures, which included "a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." 408 U.S. 471, 485, 33 L. Ed. 2d 484, 497, 92 S. Ct. 2593.

The facts in both *Gagnon* and *Morrissey* are readily distinguishable from those in the instant case. Both involved summary procedures by administrative officials. As the Supreme Court of Illinois observed in *People v. Beard* (1974), 59 Ill. 2d 220, 225-26, *cert. denied,* 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999:

> "We note that in *Gagnon v. Scarpelli* the court was confronted with a situation wherein the determination to revoke probation was made by the Wisconsin Department of Public Welfare. Unlike that case our present statutory provisions dealing with probation revocation require that judicial proceedings be conducted to determine the fact of the violation alleged in the revocation petition. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(b).) At these proceedings 'The State has the burden of going forward with the evidence and proving the violation by the preponderance of the evidence. The evidence shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel.' (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(c).) A defendant may appeal an adverse decision revoking probation. (Supreme Court Rule 604(b), as amended effective September 1, 1974.) * * * We conclude that the defendants have been afforded procedural safeguards comportable with those mandated in

*Gagnon v. Scarpelli* which fully insure the interest of a probationer 'that his liberty is not unjustifiably taken away and the [interest of] the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.' 411 U.S. at 785, 36 L. Ed. 2d at 663-664."

■■ The same distinctions were noted by this court in *People v. Blake* (1973), 15 Ill. App. 3d 39, 42, *affirmed*, 59 Ill. 2d 220, *cert. denied*, 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999.

The question of whether the failure to provide for a prerevocation or preliminary hearing under the Illinois procedure was violative of a probationer's right of due process was squarely faced by the court in *People v. Hunt* (1975), 29 Ill. App. 3d 416. There, in a well-reasoned opinion, the court held that a prerevocation hearing is not mandated by *Morrissey* where the final revocation hearing is held sufficiently soon after the taking of the probationer into custody to insure that his rights have not been prejudiced by the failure to hold a preliminary hearing, or where the probationer "expressly or by implication waive[s] the time within which the State must proceed at the revocation hearing." (29 Ill. App. 3d 416, 421.) We agree with that holding, and do not believe that the Supreme Court intended a requirement for a preliminary or prerevocation hearing in every case, under all procedures and circumstances. As the Court noted in *Morrissey*, "due process is flexible and calls for such procedural protections as the particular situation demands." (408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593.) As the court held in *People v. Hunt*, "Due process does not require that a probationer benefit from the denial of a timely prerevocation hearing, but only that no unfairness result therefrom." 29 Ill. App. 3d 416, 421.

Here, we can say with certainty that no unfairness resulted from the failure to hold the prerevocation hearing. The defendant was released on bond after the filing of the original petition, and was not confined until after the filing of the second supplemental petition; the hearing was then set for September 11, 1975, only two weeks after the conduct complained of in that petition. The delay of five months between the filing of the initial petition and the final disposition was necessitated by the substitution of new counsel for the defendant, continuances requested or agreed to by defendant's counsel, and conduct of the defendant which required the filing of supplemental petitions. Defendant has been unable to cite a single witness or piece of evidence which became unavailable to him because of the passage of time prior to the final disposition of the cause. Under all of these circumstances and in view of the elaborate safeguards afforded by our Illinois procedure, no unfairness resulted from

the failure to accord the defendant a preliminary, or prerevocation hearing.

■■ Finally, the defendant has argued that the trial court's failure to grant him credit against his sentence for the time he spent on probation was "impermissibly arbitrary" since it was "unsupported by reasons stated in the record." While this specific contention of the defendant is without merit (*People v. Dixon* (1976), 41 Ill. App. 3d 910; *People v. Bellars* (1976), 38 Ill. App. 3d 350), we note that from January 1, 1973, until July 1, 1974, the applicable statute (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(h)) mandated that a defendant whose probation was revoked be granted a credit against his sentence for time spent on probation. The defendant was entitled to the benefit of this intervening statute, and the court erred in failing to grant him credit for the time he spent on probation. *People v. Peach* (1976), 39 Ill. App. 3d 757; *People v. Reese* (1976), 37 Ill. App. 3d 820; *People v. Meyer* (1976), 43 Ill. App. 3d 109; see also *People v. Williams* (1975), 60 Ill. 2d 1, 17.

This cause is therefore remanded to the circuit court of Lake County and that court is directed to issue an amended mittimus reflecting a credit for time the defendant actually spent on probation under his original robbery conviction.

Affirmed and remanded with directions.

SEIDENFELD and GUILD, JJ., concur.